# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ADAM S. LEVY on behalf of himself and all others similarly situated,<br><br>                      Plaintiff,<br><br>vs.<br><br>THOMAS GUTIERREZ, RICHARD J. GAYNOR, RAJA BAL, J. MICHAL CONAWAY, KATHLEEN A. COTE, ERNEST L. GODSHALK, MATTHEW E. MASSENGILL, MARY PETROVICH, ROBERT E. SWITZ, NOEL G. WATSON, THOMAS WROE, JR., MORGAN STANLEY & CO. LLC, GOLDMAN, SACHS & CO., AND CANACCORD GENUITY INC.,<br><br>                      Defendants. | No. 1:14-cv-00443-JL<br><br>Honorable Joseph Laplante<br><br>JURY TRIAL DEMANDED<br><br>**Oral Argument Requested** |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Miles N. Ruthberg (*pro hac vice* pending)
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
(212) 906-1200
miles.ruthberg@lw.com

Brian T. Glennon (*pro hac vice*)
Nathan M. Saper (*pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California 90071
(213) 485-1234
brian.glennon@lw.com
nathan.saper@lw.com

Sarah E. Diamond (*pro hac vice*)
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
(714) 540-1235
sarah.diamond@lw.com

William C. Saturley (NH Bar #2256)
Nathan R. Fennessy (NH Bar #264672)
PRETI FLAHERTY, PLLP
PO Box 1318
Concord, New Hampshire 03302
(603) 410-1500
wsaturley@preti.com
nfennessy@preti.com

*Attorneys for Defendant*
*Apple Inc.*

**TABLE OF CONTENTS**

Pages(s)

I. INTRODUCTION ............................................................................................................. 1

II. PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY .............................. 2

    A. The Control Person Claims Are Properly Subject To A Motion To Dismiss .................................................................................................................. 2

    B. Plaintiffs Fail To Plead Control Person Liability Under First Circuit Law ....................................................................................................................... 2

        1. Apple's Contractual Rights Regarding GTAT's Sapphire Business Do Not Establish Control ............................................................... 3

        2. Apple Did Not Control GTAT's Statements To Its Investors ................................................................................................... 4

        3. Apple's Secured Loan Does Not Establish Control ................................... 5

        4. The Squiller Declaration Does Not Establish Control ............................... 6

III. PLAINTIFFS' "FRAUDULENT SCHEME" CLAIM FAILS ........................................... 7

    A. Plaintiffs Fail To Plead That Apple Took Any Act In Furtherance Of A Fraudulent Scheme ..................................................................................... 7

    B. Plaintiffs Fail To Plead A "Strong Inference" Of Scienter .................................... 8

    C. Plaintiffs Fail To Plead Reliance ........................................................................... 9

    D. Plaintiffs Fail To Plead Loss Causation .............................................................. 10

IV. CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002) .................................................................................... 2, 3, 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 2, 5, 8

*Badger v. S. Farm Bureau Life Ins. Co.*,
  612 F.3d 1334 (11th Cir. 2010) .............................................................................. 9

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................................ 11

*Coyne v. Metabolix, Inc.*,
  943 F. Supp. 2d 259 (D. Mass. 2013) .................................................................... 12

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................ 12

*Harron v. Town of Franklin*,
  660 F.3d 531 (1st Cir. 2011) .................................................................................. 8

*In re Allaire Corp. Sec. Litig.*,
  224 F. Supp. 2d 319 (D. Mass. 2002) .................................................................... 5

*In re Brooks Automation, Inc. Sec. Litig.*,
  2007 WL 4754051 (D. Mass. Nov. 6, 2007) ......................................................... 6

*In re Falstaff Brewing Corp. Antitrust Litig.*,
  441 F. Supp. 62 (E.D. Mo. 1977) .......................................................................... 7

*In re Galena Biopharma, Inc. Sec. Litig.*,
  2015 WL 4643474 (D. Or. Aug. 5, 2015) ............................................................. 11

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
  650 F.3d 167 (2d Cir. 2011) ................................................................................... 4

*In re Lernout & Hauspie Secs. Litig.*,
  230 F. Supp. 2d 152 (D. Mass. 2002) .................................................................... 4

*In re Novell, Inc. S'holder Litig.*,
  2012 U.S. Dist. LEXIS 16765 (D. Mass. Feb. 10, 2012) ...................................... 2, 5

*In re StockerYale*,
  453 F. Supp. 2d 345 (D.N.H. 2006) ....................................................................... 5

10226410.1

*In re Stone & Webster, Inc., Sec. Litig.*,
    414 F.3d 187 (1st Cir. 2005) .................................................................................................. 3

*Janus Capital Group, Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ............................................................................................................. 2

*Metge v. Baehler*,
    762 F.2d 621 (8th Cir. 1985) ............................................................................................... 6

*Regents of the Univ. of Cal. v. Credit Suisse First Boston*,
    482 F.3d 372 (5th Cir. 2007) ............................................................................................... 9

*Roth v. Bank of the Commonwealth*,
    1981 WL 1671 (W.D.N.Y. Aug. 17, 1981) ......................................................................... 7

*Schlifke v. Seafirst Corp.*,
    866 F.2d 935 (7th Cir. 1989) ............................................................................................... 6

*SEC v. Berry*,
    580 F. Supp. 2d 911 (N.D. Cal. 2008) ................................................................................. 8

*SEC v. Patel*,
    2009 U.S. Dist. LEXIS 90558 (D.N.H. Sept. 30, 2009) ........................................... 8, 9, 10

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta Inc.*,
    552 U.S. 148 (2008) ....................................................................................................... 2, 11

*Swack v. Credit Suisse First Boston*,
    383 F. Supp. 2d 223 (D. Mass. 2004) .................................................................................. 6

*Taylor v. Westor Cap. Grp.*,
    943 F. Supp. 2d 397 (S.D.N.Y. 2013) ................................................................................. 9

*Tech Exch. Corp. v. Grant Cnty. State Bank*,
    646 F. Supp. 179 (D. Colo. 1986) ....................................................................................... 7

*Tellabs, Inc. v. Makor Issues & Rights*, Ltd.,
    551 U.S. 308 (2007) ........................................................................................................... 10

## STATUTES

15 U.S.C. § 78u-4(b)(4) ............................................................................................................. 10

## RULES

Fed. R. Civ. P. 9(b) ....................................................................................................................... 7

## REGULATIONS

17 C.F.R. § 230.405 ...................................................................................................................... 4

**I.        INTRODUCTION**

Nothing in the Complaint supports Plaintiffs' attempt to hold Apple liable for GTAT's alleged violations of the federal securities laws.  The claims against Apple are based entirely on the terms of a commercial contract that was negotiated at arm's-length between two sophisticated companies.  No case has recognized a claim based on allegations like these, and this Court should not be the first.

To state a claim for control person liability, Plaintiffs must allege facts showing that Apple exercised "general control" over GTAT's business operations.  But here, Plaintiffs claim that Apple had certain contractual rights as to only one part of one segment of GTAT's business, which is insufficient.  Apple did not control GTAT's alleged false statements, nor have Plaintiffs alleged any facts suggesting that Apple prevented GTAT from disclosing anything.  Plaintiffs' control person claims rest on nothing more than Daniel Squiller's conclusion – submitted in a declaration made in a different proceeding for a different purpose – that Apple exercised "*de facto* control" over GTAT.  Whatever Mr. Squiller meant, his statement provides no basis for holding Apple liable for GTAT's alleged false statements or omissions.

Plaintiffs further assert that Apple engaged in a scheme to defraud GTAT's investors by "forcing" GTAT to enter into alleged one-sided agreements, and then "forc[ing]" GTAT to conceal its own struggles to perform.  Yet, Plaintiffs do not attempt to explain why Apple would commit to a massive financial investment for the primary purpose of defrauding *GTAT's* investors.  The missing factual support is fatal here, as Plaintiffs must plead specific facts showing Apple's alleged intent and participation in the fraudulent scheme.  Plaintiffs fail to even acknowledge this heightened pleading standard, much less satisfy it.

For these reasons, and the reasons set forth in Apple's Motion to Dismiss, the third, fourth, and eighth causes of action in the Complaint should be dismissed with prejudice.

## II.   PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY[1]

### A.   The Control Person Claims Are Properly Subject To A Motion To Dismiss

Plaintiffs' argument that control person liability cannot be decided on the pleadings (Dkt. 115 at 3, 12) is demonstrably incorrect.  Courts within the First Circuit have dismissed control person claims for failure to plead control.  *See, e.g., Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002); *In re Novell, Inc. S'holder Litig.*, 2012 U.S. Dist. LEXIS 16765, at *19-22 (D. Mass. Feb. 10, 2012).  Indeed, if control person claims could never be dismissed, a plaintiff would need only allege a bare conclusion of "control," undermining the Supreme Court's requirement that a plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs' argument relies on cases that predate *Twombly* and *Iqbal*.  (*See* Dkt. 115 at 10-15.)

### B.   Plaintiffs Fail To Plead Control Person Liability Under First Circuit Law

Plaintiffs advance four arguments in support of their unprecedented control person liability claims: (1) "Apple exercised complete control over GTAT's sapphire business" (Dkt. 115 at 6); (2) "Apple controlled GTAT's fraudulent statements to investors" (*id*. at 13); (3) "Apple utilized its status as GTAT's most significant secured lender to control GTAT's

---

[1] Plaintiffs erroneously argue that *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008) and *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) are inapplicable. (Dkt. 115 at 11 n.4.)  For years, enterprising lawyers searching for deep pockets have tried to expand the boundaries of the federal securities laws by seeking to hold third parties liable for the conduct of others.  In both *Stoneridge* and *Janus*, the Supreme Court emphasized that Congress only authorized third party liability under limited circumstances. Plaintiffs' claims against Apple here seek to expand the federal securities laws in ways analogous to those the Supreme Court already rejected.  (*See* Dkt. 109-1 at 10-11.)

2

corporate structure and financing" (*id.* at 9); and (4) "GTAT, through Defendant Squiller, confirmed that Apple exercised '*de facto* control over GTAT.'" (*Id.* at 12.)[2]

### 1. Apple's Contractual Rights Regarding GTAT's Sapphire Business Do Not Establish Control

Plaintiffs contend that "Apple exercised complete control over *GTAT's sapphire business*" (Dkt. 115 at 6 (emphasis added)) because Apple "owned the Mesa Facility that housed the sapphire project," "controlled the power and construction contracts," created the "Material Review Board," and negotiated terms that defined GTAT's rights to sell product to Apple's competitors. (*Id.* at 6-8.) These allegations are insufficient as a matter of law.

The First Circuit requires facts establishing that the alleged control person "not only ha[d] the general power to control the company," but also "actually exercise[d] control over the company." *Aldridge*, 284 F.3d at 84-85; *cf. In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 194 (1st Cir. 2005) (control over "primary violator" is a necessary element); *see also* Dkt. 109-1 at 12-13 (citing cases).[3] Here, Plaintiffs do not allege that Apple controlled GTAT's *general* operations. GTAT had two non-sapphire business segments over which Apple had no control. (Dkt. 109-1 at 15.) Apple did not even have "general control" over GTAT's sapphire business: Apple had almost no involvement in GTAT's sapphire business outside of the Mesa

---

[2] These allegations fall far short of establishing control person liability against Apple as discussed below, and in any event, they come nowhere close to demonstrating "culpable participation" on Apple's part. (*See* Dkt. 107-1 at 14-15; *see also* Dkt. 111-1 at 57).

[3] Plaintiffs argue that *In re Lernout & Hauspie Securities Litigation*, 230 F. Supp. 2d 152 (D. Mass. 2002) is distinguishable because the plaintiffs "failed to present any evidence demonstrating actual control." (Dkt. 115 at 16 n.11.) Yet *Lernout* confirmed that to plead control person liability a plaintiff must establish "*general power*" to control the company. *Lernout*, 230 F. Supp. 2d at 175. Plaintiffs argue that *In re Lehman Brothers Mortgage-Backed Securities Litigation*, 650 F.3d 167 (2d Cir. 2011) is distinguishable for the same reason. (*See* Dkt. 115 at 16 n.12.) But the court in *Lehman* held that "purported involvement in transaction-level decisions falls far short of showing a power to direct the primary violator's 'management and policies.'" *Lehman*, 650 F.3d at 187. These cases are entirely consistent with First Circuit jurisprudence. *See Aldridge*, 284 F.3d at 84-85.

3

project. (*See* Dkt. 109-6 at 5 (GTAT management believed that the Apple agreements would facilitate "the growth of other sapphire opportunities, including the expansion of our LED and industrial sapphire businesses in partnership with our ASF customers").) Even with respect to the Mesa facility, Apple's alleged "control" was limited to contractual terms that did not give rise to "general control" of that segment of GTAT's business. (*See* Dkt. 109-1 at 16.)[4] Plaintiffs fail to cite a single case where a court found that one company exercised control over another based on nothing more than provisions in a commercial agreement.[5]

### 2. Apple Did Not Control GTAT's Statements To Its Investors

Plaintiffs contend that Apple had "substantial control over GTAT's false and misleading statements and omissions to investors" (Dkt. 115 at 8) because Apple "required GTAT to enter into a series of confidentiality agreements" that allegedly "forced the Company to conceal the problems with [its] sapphire production." (*Id*. at 8, 13.) Although Plaintiffs claim that Apple had the right to review and approve certain of GTAT's public statements (*id*. at 8), they do not allege Apple ever actually exercised this control over any public statements, much less caused GTAT to make any allegedly false and misleading statements. In fact, the agreements expressly provided that GTAT could make any disclosure "required by law," including the securities laws. (*See* Dkt. 109-9 at 2; *see also* Dkt. 109-8 at 7; Dkt. 115-2 at 16 n.4.) Plaintiffs' conclusory assertion that the confidentiality provisions *forced* GTAT to make affirmatively false or misleading statements is insufficient as a matter of law. *See Novell*, 2012 U.S. Dist. LEXIS

---

[4] Plaintiffs argue that "GTAT diverted virtually all of its resources to its sapphire segment" (Dkt. 115 at 17), but that was a decision made by GTAT, not Apple.

[5] Plaintiffs' citation to an SEC regulation does not support their conclusion that Apple controlled GTAT. (Dkt. 115 at 3 (citing 17 C.F.R. § 230.405).) The regulation recognizes that in certain limited circumstances – *e.g.*, an employment contract with a CEO – a contractual relationship may give rise to control. But under well-settled First Circuit jurisprudence, a plaintiff must show general control over a company, which Plaintiffs have failed to plead.

16765, at *19-22 (dismissing control person claim because allegation that defendant had "direct supervisory control over composition of the [misleading] Proxy" was "conclusory and insufficient to meet *Iqbal*'s pleading standard").[6]

### 3. Apple's Secured Loan Does Not Establish Control

Plaintiffs' contention that Apple "utilized its status as GTAT's most significant secured lender to control GTAT's corporate structure and financing" (*see* Dkt. 115 at 9) does not establish control as a matter of law. *See, e.g., Schlifke v. Seafirst Corp.*, 866 F.2d 935, 949-50 (7th Cir. 1989) ("[T]he fact that the Bank extended a loan to a company . . . and took measures to secure its loans does not establish actual exercise of control.").[7] Plaintiffs fail to allege that Apple used any alleged leverage to *exercise* general control over GTAT. *Compare* Dkt. 115 at 14 ("Apple could call its loans at any moment (which would bankrupt GTAT)") *with Metge v. Baehler*, 762 F.2d 621, 631-32 (8th Cir. 1985) (that lender had leverage over borrower was

---

[6] Finally, although Plaintiffs claim that "courts routinely hold that control over the entity that issued the false statements is sufficient under Section 20(a)" (Dkt. 115 at 13), their cases do not involve the unusual circumstances alleged here – a claim that one company controlled an entirely different company – but instead involve *executive officers of the alleged controlled entity*. *See In re StockerYale Sec. Litig.*, 453 F. Supp. 2d 345, 361 (D.N.H. 2006) (CFO and COO "were directly responsible for the day-to-day management of the company [and] possessed the power and authority to control the content of press releases"); *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 341 (D. Mass. 2002) (corporate officers "had the opportunity and ability to correct" allegedly false statements); *In re Brooks Automation, Inc. Sec. Litig.*, 2007 WL 4754051, at *13 (D. Mass. Nov. 6, 2007) (company's CFO "participated in the day-to-day management of the company and signed some of the allegedly misleading SEC filings").

[7] Plaintiffs argue that *Schlifke* is inapplicable because the Seventh Circuit's control standard is "completely different from First Circuit law." (Dkt. 115 at 14 n.8.) The court in *Schlifke* rejected plaintiffs' control allegations on two independent grounds: (1) taking measures to secure a loan "does not establish actual exercise of control," and (2) plaintiffs submitted no evidence showing the bank's "potential for control over the *specific activity* upon which the primary violation [was] predicated." *Schlifke*, 866 F.2d at 949-50 (emphasis added). This analysis is consistent with First Circuit law. *See, e.g., Aldridge*, 284 F.3d at 84-85; *see also Swack v. Credit Suisse First Boston*, 383 F. Supp. 2d 223, 246 (D. Mass. 2004) (dismissing control person claim against manager of analyst who issued misleading reports because plaintiff failed to "allege that [the manager] actually exercised control over [the analyst] . . . to the extent of controlling the contents of his . . . reports").

insufficient to show control because "[a]t most" it "suggest[ed] the *potential* for influence over some of [the borrower's] business decisions," whereas control requires lender to have actually "exercised control over . . . the operations of the corporation in general") (emphasis in original). Plaintiffs' authorities are inapposite because the lenders in those cases actually *exerted* their leverage to control the borrowers' general operations, and/or legally distinguishable because they are inconsistent with the First Circuit's requirements for pleading control liability.[8]

Further, Plaintiffs contend that Apple "controlled GTAT's employment decisions" (Dkt. 115 at 9) but they concede that Apple had only a limited right to provide input regarding 12 GTAT employees (*id*.), who were "dedicated to supporting GTAT in fulfillment of its obligations to Apple." (Dkt. 109-5 at 17.) Merely having such a right is not enough: Plaintiffs do not allege any facts suggesting that Apple ever provided any input at all into GTAT's employment decisions.[9]

### 4. The Squiller Declaration Does Not Establish Control

Based solely upon Mr. Squiller's bankruptcy court declaration, Plaintiffs argue that GTAT "admitted" that Apple exercised "*de facto* control" over GTAT. (*See, e.g.*, Dkt. 115 at 12.) First, any purported "admission" by GTAT is not binding on Apple. Second, Mr. Squiller's

---

[8] *See In re Falstaff Brewing Corp. Antitrust Litig*., 441 F. Supp. 62, 65, 68 (E.D. Mo. 1977) (lenders threatened to declare loans in default unless borrower obtained equity investor, and then conspired with borrower to prepare false financial statements); *Tech Exch. Corp. v. Grant Cnty. State Bank*, 646 F. Supp. 179, 183 (D. Colo. 1986) (allegation that lender "threaten[ed] foreclosure if [debtor] did not comply with its demands" was sufficient because court held that control required "only an indirect means of discipline or influence short of actual direction"); *Roth v. Bank of the Commonwealth*, 1981 WL 1671, at *27-28 (W.D.N.Y. Aug. 17, 1981) (holding that "[m]ere possession of the power to control, rather than the actual exercise of such power, is sufficient" to show control).

[9] Plaintiffs claim that Apple "forced GTAT to create bankruptcy-remote subsidiaries" and "demanded that GTAT terminate its revolving credit agreement with Bank of America" (Dkt. 115 at 9), but Plaintiffs acknowledge that GTAT engaged in this restructuring before its agreements with Apple were executed. (*See* Dkt. 87 ¶ 213; *see also* Dkt. 115-2 at 10.)

6

declaration is a layman's conclusion, devoid of factual support. *See Ashcroft*, 556 U.S. at 679; *see also Harron v. Town of Franklin*, 660 F.3d 531, 535 (1st Cir. 2011) (the court will "disregard any . . . conclusions couched as facts"). Finally, Mr. Squiller's claim that Apple exercised "*de facto* control" has no bearing on whether Apple exercised general control over GTAT. Mr. Squiller's declaration was offered for a completely different purpose – in connection with GTAT's bankruptcy proceedings – and addressed issues that were never adjudicated.

### III.  PLAINTIFFS' "FRAUDULENT SCHEME" CLAIM FAILS

Before describing why Plaintiffs have failed to meet their burden for pleading a "scheme to defraud" claim against Apple, it is worth acknowledging the extraordinary premise underlying this claim: *Plaintiffs claim that Apple "engaged in conduct that had the principal purpose and effect" of defrauding GTAT's investors*. *SEC v. Patel*, 2009 U.S. Dist. LEXIS 90558, at *29-30 (D.N.H. Sept. 30, 2009) (quoting *SEC v. Berry*, 580 F. Supp. 2d 911, 923 (N.D. Cal. 2008)). Plaintiffs fail to advance any plausible reason why Apple would ever engage in conduct that had the *principal purpose and effect* of defrauding GTAT's stockholders. But even setting aside this lack of plausibility, Plaintiffs fail completely to plead particularized facts required to support a claim for scheme liability. (*See* Dkt. 109-1 at 18-20 (describing the heightened pleading standard under the PSLRA and Fed. R. Civ. P. 9(b)).)

#### A. Plaintiffs Fail To Plead That Apple Took Any Act In Furtherance Of A Fraudulent Scheme

Notably, Plaintiffs do not allege that Apple took *any* actions with the primary intent to deceive. *See Taylor v. Westor Cap. Grp.*, 943 F. Supp. 2d 397, 401 (S.D.N.Y. 2013) (plaintiff must plead with specificity that defendant "committed a deceptive or manipulative act"); *Patel*, 2009 U.S. Dist. LEXIS 90558, at *29-30 (defendant must have acted with "the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme"). Instead,

7

Plaintiffs argue that Apple (1) "forc[ed] GTAT into an 'onerous' and 'massively one-sided' transaction," and (2) "prevent[ed] GTAT from disclosing the true risks of the transaction." (Dkt. 115 at 1-2, 19, 21.) Neither argument supports the inference that Apple participated in a fraudulent "scheme."

Apple did not "force" GTAT into anything. The agreements were negotiated and executed by two sophisticated public companies. Even if the parties recognized a possibility that GTAT might not be able to perform, Apple had no duty to disclose anything to GTAT's investors: "[C]ourts have uniformly declined to find a duty to disclose running from one party in an arm's-length . . . transaction to the shareholders of the counterparty to the transaction." *Badger v. S. Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1343 (11th Cir. 2010); *see also Regents of the Univ. of Cal. v. Credit Suisse First Boston*, 482 F.3d 372, 386, 390 (5th Cir. 2007) (same). Plaintiffs present a litany of allegedly false or misleading statements by GTAT (*see, e.g.,* Dkt. 116 at 114-16), but Plaintiffs offer no factual support suggesting that Apple forced GTAT to make a single one of these statements. *See Patel*, 2009 U.S. Dist. LEXIS 90558, at *29-30.

### B. Plaintiffs Fail To Plead A "Strong Inference" Of Scienter

Most fundamentally, Plaintiffs come nowhere close to satisfying the controlling pleading standard, which requires that they plead "specific allegations of fact giving rise to a 'strong inference'" that Apple acted with a "conscious intent to defraud" or "a high degree of recklessness," as required under the PSLRA and First Circuit law. (Dkt. 109-1 at 19 (citing cases).) Plaintiffs plead no particularized facts that Apple "had actual knowledge that GTAT was not able to comply" with the Apple agreement," "learned, in real time, that GTAT's efforts . . . were fruitless," and "acted recklessly by knowing of the danger the Apple agreement posed to GTAT investors." (Dkt. 115 at 20-21.) In fact, Plaintiffs do not plead who at Apple

8

had "actual knowledge" that GTAT could not perform or that its efforts were "fruitless," how or when Apple "knew" this, or how or when Apple allegedly learned that any of GTAT's public statements were false or misleading. (*Id*. at 20.) These vague, conclusory allegations – which lack any particularized factual support – are insufficient to satisfy the heightened pleading standard under the PSLRA and First Circuit law. *See Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 313 (2007) ("The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter.").

Moreover, any inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." (Dkt. 109-1 at 19 (citing cases).) Here, Plaintiffs' implausible theory of fraud is not "cogent" at all, as Plaintiffs cannot explain why Apple would have been motivated to engage in such a scheme, which cost Apple hundreds of millions of dollars and did not result in GTAT serving as a sapphire vendor for Apple. The far more cogent and compelling inference – in fact, the only reasonable inference – is that Apple entered into the agreements in good faith, in hope that Apple would obtain the sapphire supply that it sought. That the venture ultimately proved unsuccessful does not mean that Apple intended to defraud anyone; again, a theory for which Plaintiffs offer no particularized factual support.

C. **Plaintiffs Fail To Plead Reliance**

Plaintiffs cannot plead that the allegedly deceptive acts were disclosed to the investing public, and in any event, Apple's alleged acts were "too remote to satisfy the requirement of reliance." *Stoneridge*, 552 U.S. at 160-61. (*See* Dkt. 109-1 at 19-20); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988). Plaintiffs do not allege any facts demonstrating that Apple was involved in drafting, approving, or disseminating any public statements by GTAT. Plaintiffs allege only that, pursuant to standard confidentiality provisions in the agreements, GTAT agreed

9

to get Apple's input before disclosing Apple's confidential information. This is insufficient as a matter of law.[10]

### D. Plaintiffs Fail To Plead Loss Causation

Plaintiffs seek to recover losses resulting from "the price drops on September 9, 2014 and October 6, 2014." (Dkt. 115 at 24.) But Plaintiffs offer no explanation as to how *Apple*'s alleged fraudulent conduct – which, according to Plaintiffs, was concealed from investors until the GTAT bankruptcy court unsealed certain filings on November 4, 2014 (*see* Dkt. 87 ¶¶ 99-111) – could have caused the earlier stock price drops that Plaintiffs contend caused their damages. *See Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 273 (D. Mass. 2013) ("It is not enough to allege that . . . some announcement caused a stock drop . . . [the] 'corrective disclosure,' must connect the current, present, negative information to the earlier false or misleading statement.") (citing 15 U.S.C. § 78u-4(b)(4); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). Plaintiffs' "fraudulent scheme" claim fails for this additional reason.

## IV. CONCLUSION

Accordingly, Apple respectfully requests that the Court grant its Motion to Dismiss.

---

[10] In addition, Apple and GTAT's relationship "took place in the marketplace for goods and services, not the investment sphere." (*See* Dkt. 109-1 at 23-24 (*citing Stoneridge*, 552 U.S. at 161, 166-67).) The Supreme Court made clear in *Stoneridge* that where a transaction takes place in the marketplace for goods and services and not in the investment sphere, investors cannot be said "to have relied upon any of [the parties'] deceptive acts in the decision to purchase or sell securities." *Stoneridge,* 552 U.S. at 166-67. Moreover, Plaintiffs' reliance on *In re Galena Biopharma, Inc. Sec. Litig.*, 2015 WL 4643474 (D. Or. Aug. 5, 2015) is misplaced because that case involved third party conduct in "the investment sphere." *Id*. at *4.

Dated: March 2, 2016 Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Brian T. Glennon*

   Miles N. Ruthberg (*pro hac vice* pending)
   LATHAM & WATKINS LLP
   885 Third Avenue
   New York, New York 10022
   (212) 906-1200
   miles.ruthberg@lw.com

   Brian T. Glennon (*pro hac vice*)
   Nathan M. Saper (*pro hac vice*)
   LATHAM & WATKINS LLP
   355 South Grand Avenue
   Los Angeles, California 90071
   (213) 485-1234
   brian.glennon@lw.com
   nathan.saper@lw.com

   Sarah E. Diamond (*pro hac vice*)
   LATHAM & WATKINS LLP
   650 Town Center Drive, 20th Floor
   Costa Mesa, California 92626
   (714) 540-1235
   sarah.diamond@lw.com

   William C. Saturley (NH Bar #2256)
   Nathan R. Fennessy (NH Bar #264672)
   PRETI FLAHERTY, PLLP
   PO Box 1318
   Concord, New Hampshire 03302
   (603) 410-1500
   wsaturley@preti.com
   nfennessy@preti.com

   *Attorneys for Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 2nd day of March, 2016, the Reply Memorandum of Law in Support of Defendant Apple Inc.'s Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint was electronically served through ECF on all registered attorneys in the case under Civil Action No. 14-cv-00443-JL.

                */s/ Brian T. Glennon*
                Brian T. Glennon (*pro hac vice*)

10226410.1