# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| ADAM S. LEVY on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS GUTIERREZ, RICHARD J. GAYNOR, RAJA BAL, J. MICHAL CONAWAY, KATHLEEN A. COTE, ERNEST L. GODSHALK, MATTHEW E. MASSENGILL, MARY PETROVICH, ROBERT E. SWITZ, NOEL G. WATSON, THOMAS WROE, JR., MORGAN STANLEY & CO. LLC, GOLDMAN, SACHS & CO., AND CANACCORD GENUITY INC.,<br><br>Defendants. | CIVIL ACTION<br>NO. 1:14-CV-00443-JL |

### REPLY MEMORANDUM IN SUPPORT OF
### DEFENDANTS CONAWAY, COTE, GODSHALK, MASSENGILL,
### PETROVICH, SWITZ, WATSON AND WROE'S MOTION TO DISMISS

Brian J.S. Cullen, Bar No. 11265
**CULLENCOLLIMORE, PLLC**
10 East Pearl Street
Nashua, NH  03060
Tel (603) 881-5500
bcullen@cullencollimore.com

Jordan D. Hershman (admitted *pro hac vice*)
Jason D. Frank (admitted *pro hac vice*)
William R. Harb (admitted *pro hac vice*)
Emily E. Renshaw (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA  02110-1726
Tel (617) 951-8455
Fax (617) 951-8736
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com
william.harb@morganlewis.com
emily.renshaw@morganlewis.com

# **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION .................................................................................................................. 1

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I. PLAINTIFFS' CLAIMS UNDER SECTION 11 OF THE SECURITIES ACT OF 1933 SHOULD BE DISMISSED ................................ 2

    A. The Offering Materials Explicitly Warned Investors Regarding The Very Risks About Which Plaintiffs Now Complain ..................... 2

        1. The Offering Materials Disclosed The Apple Agreement And The Risks Associated With That Agreement .................. 2

        2. The Offering Materials Disclosed The Risks Associated With The Apple Agreement's Exclusivity Provision .............. 6

        3. The Offering Materials Disclosed The Risks Concerning GTAT's Liquidity And Capital Resources ............................ 7

    B. The Plaintiffs' Claims Based On Forward-Looking Statements In The Offering Materials Should Be Dismissed Under The PSLRA's Safe Harbor Provision ...................... 8

        1. GTAT's Forward-Looking Statements Are Immune From Liability Under The First Prong Of The PSLRA's Safe Harbor Provision ............................... 8

        2. GTAT's Forward-Looking Statements Are Immune From Liability Under The Second Prong Of The PSLRA's Safe Harbor Provision ............................ 9

    C. Plaintiffs Fail To Allege Any Other Misrepresentation Or Omission Of Material Fact ............................................... 11

II. PLAINTIFFS' "CONTROL PERSON" CLAIMS AGAINST THE OUTSIDE DIRECTOR DEFENDANTS SHOULD BE DISMISSED .................. 12

III. PLAINTIFFS LACK STANDING TO PURSUE CLAIMS ARISING OUT OF GTAT'S SECONDARY OFFERING OF COMMON STOCK ...................... 13

CONCLUSION ..................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**CASES**          **PAGE(S)**

Aldridge v. A.T. Cross Corp.,
    284 F.3d 72 (1st Cir. 2002)..................................................................................................12

In re Am. Bus. Fin. Servs., Inc. Sec. Litig.,
    No. 05-cv-232, 2007 WL 81937 (E.D. Pa. Jan. 9, 2007).................................................12, 13

In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)..................................................................................14

Backman v. Polaroid Corp.,
    910 F.2d 10 (1st Cir. 1990)...........................................................................................1, 4, 5

In re Cabletron Sys., Inc.,
    311 F.3d 11 (1st Cir. 2002)..................................................................................................12

Cardon v. TestOut! Corp.,
    244 F. App'x 908 (10th Cir. 2007) .......................................................................................3

Coyne v. Metabolix, Inc.,
    943 F. Supp. 2d 259 (D. Mass. 2013) ..................................................................................9

Doe v. Univ. of Mass.-Amherst,
    No. 14-cv-30143, 2015 WL 4306521 (D. Mass. July 14, 2015) .......................................11

Ehlert v. Singer,
    85 F. Supp. 2d 1269 (M.D. Fla. 1999).................................................................................10

Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn,
    53 F. Supp. 3d 882 (E.D. La. 2014).....................................................................................10

Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn,
    No. 13-cv-3935, 2015 WL 7454598 (E.D. La. Aug. 14, 2015).....................................10, 11

Glassman v. Computervision Corp.,
    90 F.3d 617 (1st Cir. 1996)..............................................................................................1, 4

Jensen v. Kimble,
    1 F.3d 1073 (10th Cir. 1993) ............................................................................................3, 4

Kurtzman v. Compaq Comput. Corp.,
    No. 99-cv-1011, 2000 WL 34292632 (S.D. Tex. Dec. 12, 2000)........................................10

In re Newell Rubbermaid Inc. Sec. Litig.,
    No. 99-cv-6853, 2000 WL 1705279 (N.D. Ill. Nov. 14, 2000) ...........................................10

In re Novell, Inc. S'holder Litig.,
 No. 10-cv-12076, 2012 WL 458500 (D. Mass. Feb. 10, 2012) ......................................... 12, 13

Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,
 632 F.3d 762 (1st Cir. 2011) ........................................................................................................ 14

In re SeaChange Int'l Inc.,
 No. 02-cv-12116, 2004 WL 240317 (D. Mass. Feb. 6, 2004) ..................................................... 4

Shaw v. Dig. Equip. Corp.,
 82 F.3d 1194 (1st Cir. 1996) ......................................................................................................... 4

In re Tellium Inc., Sec. Litig.,
 No. 02-cv-5878, 2005 WL 1677467 (D.N.J. June 30, 2005) ....................................................... 3

In re Tyco Int'l, Ltd.,
 2007 DNH 073, No. 04-cv-1336, 2007 WL 1687775 (D.N.H. June 11, 2007) ................. 12, 13

In re Washington Mut., Inc. Sec. Derivative & ERISA Litig.,
 259 F.R.D. 490 (W.D. Wash. 2009) .................................................................................... 12, 13

**Statutes**

15 U.S.C. 77z-2(c)(1)(A)(ii) ................................................................................................... 11

## INTRODUCTION

Defendants J. Michal Conaway, Kathleen A. Cote, Ernest L. Godshalk, Matthew E. Massengill, Mary Petrovich, Robert E. Switz, Noel G. Watson, and Thomas Wroe, Jr. (collectively, the "Outside Director Defendants") submit this Reply Memorandum of Law in Support of their Motion to Dismiss the Consolidated Complaint, with prejudice.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition Brief[2] fails to address directly the fundamental reason why this Court should dismiss Plaintiffs' Section 11 claims against the Outside Director Defendants: GTAT's Offering Materials fully disclosed the very terms of the Apple Agreement that Plaintiffs allege were omitted, as well as the very risks that Plaintiffs allege materialized. It is well established in this Circuit that a Section 11 claim may not lie where a defendant actually discloses the very information that was allegedly concealed. See Glassman v. Computervision Corp., 90 F.3d 617, 626-36 (1st Cir. 1996). Plaintiffs also have failed to identify any statement in the Offering Materials that was "so incomplete as to mislead" under the First Circuit's seminal decision in Backman v. Polaroid Corp., 910 F.2d 10 (1st Cir. 1990) (en banc); see infra 2-5. Under Polaroid, which Plaintiffs fail adequately to distinguish, the Outside Director Defendants cannot be held liable for any alleged material omission in the Offering Materials because each piece of allegedly omitted information was **consistent with** the statements and disclosures in the Offering Materials. Crucially, GTAT never issued any public statement concerning 262 kg boules prior to, or even after, the December 2013 offerings, let alone a statement regarding boule size that could be deemed "so incomplete as to mislead" under Polaroid. See id. Plaintiffs' claims cannot survive in the face of this controlling law.

Plaintiffs also have no good answer to other dispositive arguments that independently dictate the dismissal of their Section 11 and Section 15 claims. All of the forward-looking

---

[1] Capitalized terms used but not defined herein shall have the meaning given to them in the Memorandum of Law in Support of Defendants Conaway, Cote, Godshalk, Massengill, Petrovich, Switz, Watson and Wroe's Motion to Dismiss ("Outside Dir. Defs. MB").

[2] Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("OB").

statements that Plaintiffs challenge are protected by the PSLRA's safe harbor provision. See infra 7-9.  Finally, Plaintiffs have failed to allege actual control sufficient to state claims against the Outside Director Defendants under Section 15, and they do not even have standing to assert claims arising out of GTAT's secondary offering of common stock, as they did not purchase such common stock, but rather engaged in short sales that yielded gains, not losses.  See infra 13-14.  For these reasons, as well as the additional reasons discussed below, the Outside Director Defendants' Motion to Dismiss should be granted.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS UNDER SECTION 11 OF THE SECURITIES ACT OF 1933 SHOULD BE DISMISSED.

Plaintiffs' Section 11 claims should be dismissed because: (1) the Offering Materials explicitly warned investors regarding the very risks about which Plaintiffs now complain; (2) Plaintiffs challenge statements that are protected by the PSLRA's safe harbor provision; and (3) Plaintiffs fail to allege any other misrepresentation or omission of material fact.  Outside Dir. Defs. MB 5-22.  The Opposition Brief fails adequately to respond to either of these arguments.

#### A. The Offering Materials Explicitly Warned Investors Regarding The Very Risks About Which Plaintiffs Now Complain.

Plaintiffs argue that the Offering Materials contained alleged misstatements and omissions regarding three subjects: (1) the terms of the Apple Agreement and its likely impact on GTAT's revenue and business; (2) the Apple Agreement's exclusivity provisions and GTAT's ability to generate non-Apple revenue; and (3) GTAT's liquidity and capital resources.  OB 76-83.  Plaintiffs' arguments do not survive a review of the Offering Materials.

##### 1. The Offering Materials Disclosed The Apple Agreement And The Risks Associated With That Agreement.

Plaintiffs argue that the Offering Materials failed to disclose that the Apple Agreement was "an onerous and massively one-sided deal" that "shifted all economic risk to GTAT" (OB 77-81), and that they were misleading for failing to mention that GTAT was required to

produce 262 kg sapphire boules. OB 78. Plaintiffs are wrong on both counts.

Plaintiffs have no satisfactory response to the fact that the Offering Materials disclosed the Apple Agreement itself, as well as the various risk factors associated with the Apple Agreement. Officer Defs. MB 4-14. There is not a single actual term or alleged risk about which Plaintiffs complain that was not disclosed to investors in the Offering Materials. The disclosure provisions of the Securities Act were famously based on the principle that "[s]unlight is said to be the best of disinfectants,"[3] and GTAT's disclosure of the terms of the Apple Agreement allowed investors to judge for themselves the risks attending the Apple Agreement.

While Plaintiffs argue that the publicly disclosed agreement contained redactions, Plaintiffs do not point to one redacted contractual term that allegedly rendered the contract "onerous" to GTAT or allegedly "one-sided." Instead, Plaintiffs simply ignore what GTAT actually disclosed and argue as if the disclosures were not made in the redacted version of the Apple Agreement, when they were. Furthermore, none of those redactions rendered the Offering Materials false or misleading. It is well established that securities claims based on allegedly "omitted" information cannot survive where the defendant fails to disclose information that it has stated it will not disclose. See In re Tellium Inc., Sec. Litig., No. 02-cv-5878, 2005 WL 1677467, at *18-19 (D.N.J. June 30, 2005) ("Investors in Tellium were aware that because of the redactions, they would not be able to evaluate the strength of the contracts based on information including delivery dates, quantities and prices of purchased products, and whether the products covered by the contract were existing products or were yet to be developed."); see also Jensen v. Kimble, 1 F.3d 1073, 1077-78 (10th Cir. 1993) (holding that, where defendants advised plaintiffs that undisclosed information would not be revealed, failure to disclose that information was not deceptive); Cardon v. TestOut! Corp., 244 F. App'x 908, 916 (10th Cir. 2007) (affirming dismissal and holding that, where defendant expressly refused to provide current valuation information and written financial statements, "[defendant's] statements were not manipulative or

---

[3] Louis D. Brandeis, Other People's Money and How the Bankers Use It 92 (1932).

deceptive").

Here, GTAT informed investors that, due to confidentiality agreements with Apple, there were certain aspects of the Apple Agreement that could not be disclosed. App. D at 6. Thus, Plaintiffs were put on notice that GTAT was bound by a confidentiality agreement and, as a result, prohibited from disclosing confidential information contained in the Apple Agreement. Put another way, Plaintiffs "knew what [they] didn't know." Jensen, 1 F.3d at 1078.

In addition, the Offering Materials included robust and detailed risk disclosures regarding negative aspects of the Apple Agreement. See App. PP at 1, 3, 4, 6, 9-11; see also Officer Defs. MB 58; Reply in Support of Defendants Thomas Gutierrez, Richard Gaynor, and Raja Bal's Motion to Dismiss ("Officer Defs. RB") 18-30. GTAT's explicit risk disclosures concerning the very risks that Plaintiffs allege ultimately materialized foreclose their 1933 Act claim. See Glassman, 90 F.3d at 635-36.[4]

Plaintiffs' argument that the Offering Materials were rendered materially false or misleading because they did not mention that GTAT intended to produce 262 kg sapphire boules (OB 80) is defective as a matter of law. GTAT was not under a freestanding duty to disclose all material information, but only information "required by the applicable statutes and regulations" to be stated in offering documents. Shaw v. Dig. Equip. Corp., 82 F.3d 1194, 1204 (1st Cir. 1996); see also In re SeaChange Int'l Inc., No. 02-cv-12116, 2004 WL 240317, at *9 (D. Mass. Feb. 6, 2004) ("Even if omitted information is material, there can be no liability . . . unless there is a duty to disclose the information.") (citing Polaroid, 910 F.2d at 13). Plaintiffs identify no applicable statute or regulation requiring disclosure of the allegedly omitted information here.

Instead, Plaintiffs argue that GTAT's Offering Materials were "so incomplete as to mislead," which they were not. Under the First Circuit's seminal decision in Polaroid, a statement that is allegedly "so incomplete as to mislead" is actionable only under very narrow

---

[4] Having disclosed the many risks associated with the Apple Agreement, GTAT was not required to characterize the agreement as "lopsided," "one-sided," "onerous," or employ any other pejorative adjective that Plaintiffs favor. See Officer Defs. RB 31 (collecting cases).

circumstances, none of which exist here. 910 F.2d at 16.[5] In a nutshell, and as discussed more fully in the Officer Defendants' Reply Brief, Polaroid stands for the proposition that an allegedly "misleadingly incomplete" statement is not actionable unless the omitted information is inconsistent with what was disclosed. Thus, in Polaroid, the defendant's statement that its camera was selling "below cost" was not actionable for failing also to disclose that its sales of the camera were below expectations. Id. Similarly, here, GTAT never made any statement in its Offering Materials, or otherwise, concerning the size of sapphire boules to be produced pursuant to the Apple Agreement. Never having made any statement concerning 262 kg boules, the failure to disclose that GTAT intended to produce 262 kg sapphire boules pursuant to the Apple Agreement does not render any public statement "so incomplete as to mislead," as a matter of law. Officer Defs. RB 26-31.

In fact, the allegedly omitted information concerning 262 kg boules (e.g., that Apple Agreement contemplated that GTAT would produce 262 kg boules, when it had never produced a sapphire boule of that size before) was completely consistent with GTAT's public statements and disclosures. That is, among other things, GTAT disclosed that the Company: (1) had historically been an equipment manufacturer; (2) had little experience manufacturing sapphire boules of any size and type; and (3) had absolutely no experience manufacturing sapphire boules in the quantities contemplated by the Apple Agreement. App. PP; Officer Defs. RB 26-30. On the basis of these, as well as other risk disclosures, investors were already well aware of the substantial risks to GTAT and its business posed by the terms of the Apple Agreement generally, as well as GTAT's obligations to produce synthetic sapphire boules to Apple's requirements, specifically. Officer Defs. MB 16-17. Thus, failing to disclose the exact size of the sapphire boules that GTAT intended to produce pursuant to the Apple Agreement did not render any challenged statement "so incomplete as to mislead."

---

[5] As the Officer Defendants explain in their Reply Brief, Plaintiffs fail to distinguish Polaroid. Officer Defs. RB 18-19.

### 2. The Offering Materials Disclosed The Risks Associated With The Apple Agreement's Exclusivity Provision.

Plaintiffs' argument that the Offering Materials misled investors concerning the exclusivity provisions in the Apple Agreement also lacks merit. OB 81-82. Investors could read for themselves the breadth of Apple's exclusivity rights by reading the text of the Apple Agreement itself, which GTAT disclosed in November 2013. See supra 2-4; Officer Defs. MB 6-7. While Plaintiffs try to make much of the fact that the disclosed versions of the exclusivity provisions contained redactions, all of the allegedly undisclosed risks that Plaintiffs cite in relation to those provisions were **fully disclosed** in the **redacted version** of the provision, which the Outside Director Defendants encourage the Court to review. See App. F at Ex. 10.2 (SOW) § 9. As the redacted provisions make clear, GTAT could not "directly or indirectly" sell any sapphire goods to any entity other than Apple in the consumer electronics market. Id. GTAT also included risk disclosures explaining the exclusivity provision's restrictive effect on GTAT's sapphire materials business. App. I, L at S-9; App. H, K at S-5; App. P at 16. Plaintiffs' contention that the Offering Materials concealed that information is demonstrably false.

Plaintiffs' related argument that GTAT misrepresented its ability to generate revenue through "other sapphire opportunities" and to "leverage its new materials operation" also falls flat. OB 81-82. As GTAT disclosed, the Apple Agreement's exclusivity provisions greatly restricted GTAT within the consumer electronics industry, yet they did not prevent GTAT from selling sapphire materials for use in LED (light emitting diode) products, as well as within the industrial and specialty markets. App. D at 2. As of that time, the LED segment was, by far, the largest segment of the market. Officer Defs. RB 23. Nor did they prevent GTAT from selling its backlog of ASF furnaces, which totaled over $350 million at the beginning of the Class Period, to current GTAT customers. App. F at 34. Those exceptions to the Apple Agreement's exclusivity provision, all of which were disclosed, **did** furnish GTAT with the ability to generate revenue through "other sapphire opportunities" and to "leverage its new material operations."

Defendant Squiller's statement that, in hindsight, GTAT found itself unable to capitalize on those prospective revenue channels does not change the fact that the potential revenue streams were open to GTAT under the Apple Agreement. Officer Defs. RB 24.  Plaintiffs' repeated assertion that the Apple Agreement prohibited GTAT from conducting sapphire business with anyone other than Apple simply cannot be squared with the publicly disclosed contractual terms and risk factors on which Plaintiffs themselves rely.  CC ¶¶153-54.

### 3. The Offering Materials Disclosed The Risks Concerning GTAT's Liquidity And Capital Resources.

In their Opposition Brief, Plaintiffs argue that the Offering Materials misrepresented that the prepayments from the Apple Agreement, along with GTAT's existing cash, would be sufficient to cover all of the costs associated with the Mesa, Arizona facility.  OB 84-85.  Plaintiffs' argument conflates equipment costs with operating costs in an attempt to manufacture a misrepresentation where there was none. The Offering Materials, however, were clear on this topic.

The Offering Materials specifically explained that the prepayments received from Apple "must be used to purchase ASF systems and related equipment" for the Mesa facility.[6]  Separate from the capital equipment costs associated with the Mesa facility, were the operating costs, which were **not** covered by Apple's prepayments.  Under the Apple Agreement, GTAT was required, "at its expense," to "maintain and operate all [e]quipment necessary to manufacture and deliver" sapphire.  App. F at Ex. 10.1 at 5.  As GTAT disclosed, the proceeds from the December Offerings would be used to fund other costs related to the Apple Agreement, i.e., these offering costs that were expressly not covered by the Apple prepayments.[7]  See CC ¶ 358.  Given these disclosures relating to the limits on the use of the Apple prepayments and the purpose of the proceeds from the December Offerings, as well as GTAT's numerous warnings concerning its liquidity and capital resources (Outside Dir. Defs. MB 23), investors were well aware of the

---

[6] App. H, I, K, L at S-2.

[7] App. H, K at S-38; App. I, L at S-48.

liquidity and capital risks that the Company faced.  Plaintiffs cannot credibly contend otherwise.

In sum, Plaintiffs' Section 11 claims should be dismissed because GTAT's Offering Materials fully disclosed the very terms of the Apple Agreement that Plaintiffs allege were omitted, as well as the very risks that Plaintiffs allege materialized, and Plaintiffs have failed to identify any statement in the Offering Materials that was "so incomplete as to mislead."

### B. The Plaintiffs' Claims Based On Forward-Looking Statements In The Offering Materials Should Be Dismissed Under The PSLRA's Safe Harbor Provision.

Plaintiffs' Opposition Brief fails adequately to explain why this Court should not dismiss all claims based on the numerous forward-looking statements in the Offering Materials, which are protected under the PSLRA's safe harbor provision.  Outside Dir. Defs. MB 14.  Plaintiffs' Section 11 claims should be dismissed on this separate and independent ground.

#### 1. GTAT's Forward-Looking Statements Are Immune From Liability Under The First Prong Of The PSLRA's Safe Harbor Provision.

As discussed in the Outside Director Defendants' Moving Brief, the PSLRA's safe harbor provision protects forward-looking statements that are accompanied by meaningful cautionary language, regardless of the speaker's state of mind.  Outside Dir. Defs. MB 14-17; see also Officer Defs. MB 14-15; Officer Defs. RB 11-14.  The Outside Director Defendants also list in their Moving Brief each of the forward-looking statements in the Offering Materials that Plaintiffs challenge and explain how each such statement was accompanied by meaningful cautionary language and, therefore, entitled to safe harbor protection.  Outside Dir. Defs. MB 14-17.  Ignoring this point, Plaintiffs argue, in conclusory fashion and without reference to any specific challenged statement, that all of the forward-looking statements that they challenge were, in actuality, statements of present fact.  OB 58.  Plaintiffs' argument does not withstand scrutiny.

Each of the statements that the Outside Director Defendants identify in their Moving Brief speak predictively of the future (e.g., "for at least the next twelve months," "starting in

-8-

2014," "in 2015," "by 2016" "over the next three years") and use language of expectation (e.g., "we expect").  These are the hallmarks of the prototypical forward-looking statement that the PSLRA safe harbor provision was enacted to encourage and protect.  See Coyne v. Metabolix, Inc., 943 F. Supp. 2d 259, 266 (D. Mass. 2013) (holding challenged statements "incontestably forward looking" where they "project[ed] future economic performance" and employed "some version of the phrase 'we anticipate' or 'we expect' – clear forward-looking, predictive language").  Nor, as Plaintiffs argue, does the mere use of the present tense within an otherwise forward-looking statement vitiate safe harbor protection.  See Officer Defs. RB 10-11 (discussing Coyne, 943 F. Supp. 2d at 268).

As to the cautionary language that accompanied the challenged forward-looking statements, Plaintiffs make no attempt to explain exactly why it was not meaningful.  OB 85.  Indeed, the Offering Materials contain over 33 pages of substantive risk disclosures, the majority of which were narrowly tailored to the specific and significant risks presented by the Apple Agreement, and all of which qualify as meaningful cautionary language under the PSLRA's safe harbor.  Outside Dir. Defs. MB 14-17 (summarizing risk disclosures).

As the challenged forward-looking statements qualify for protection under the first prong of the PSLRA's safe harbor provision, this Court need proceed no further.  Those statements cannot give rise to liability, as a matter of law.

        **2.    GTAT's Forward-Looking Statements Are Immune From Liability Under The Second Prong Of The PSLRA's Safe Harbor Provision.**

In their Opposition Brief, Plaintiffs appear to concede that they must plead "actual knowledge" to state a Section 11 claim against the Outside Director Defendants.  OB 86.  Plaintiffs, however, argue that they are not required to plead the "actual knowledge" of any individual Outside Director Defendant, because they have adequately alleged that Defendant Gutierrez had actual knowledge.  Id.  Plaintiffs have not (see Officer Defs. MB 18-21), and they could not rely on those scienter allegations in any event.

It is well established that, to plead a Section 11 claim based on forward-looking

-9-

statements, even where the first prong of the safe harbor does not apply (and it does here), Plaintiffs must plead and prove that each individual defendant had actual knowledge that the challenged statements were false when made. If not, such claims must be dismissed. See Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn, 53 F. Supp. 3d 882, 911 (E.D. La. 2014) (dismissing Section 11 claim where plaintiff failed adequately to allege defendants' actual knowledge of falsity, and, like Plaintiffs here, expressly disclaimed any allegations of fraud); Kurtzman v. Compaq Comput. Corp., No. 99-cv-1011, 2000 WL 34292632, at *62 (S.D. Tex. Dec. 12, 2000) (dismissing Section 11 claim where plaintiff failed adequately to allege defendants had actual knowledge that any particular statement was false when made); In re Newell Rubbermaid Inc. Sec. Litig., No. 99-cv-6853, 2000 WL 1705279, at *10 (N.D. Ill. Nov. 14, 2000) (same); see also Ehlert v. Singer, 85 F. Supp. 2d 1269, 1274 (M.D. Fla. 1999) (dismissing Section 11 claim where plaintiffs failed adequately to plead, inter alia, actual knowledge of falsity), aff'd on other grounds, 245 F.3d 1313 (11th Cir. 2001).

Plaintiffs have failed to allege that any defendant, let alone any of the Outside Director Defendants, had actual knowledge that any statement in the Offering Materials was false when made. Officer Defs. MB 29-32; Officer Defs. RB 33; Outside Dir. Defs. MB 18-21. Plaintiffs bear a particularly high burden in connection with their Section 11 claims, as they must demonstrate that these forward-looking statements were knowingly false when they were made on December 3 and December 5, 2013, almost a year before GTAT's bankruptcy announcement. See App. H, I, K, L. Plaintiffs have failed to identify any statement made in the Offering Materials that any defendant knew was false as of the time those statements were made in early December 2013. Having failed to plead "actual knowledge," Plaintiffs' Section 11 claims based on forward-looking statements should be dismissed. See Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn, No. 13-cv-3935, 2015 WL 7454598, at *31 (E.D. La. Aug. 14, 2015) (holding challenged forward-looking statements protected by PSLRA safe harbor and granting motion to dismiss Section 11 claim).

While Plaintiffs now argue that they are relying only upon Mr. Gutierrez's alleged

scienter to support their Section 11 claims, that argument is directly contradicted by the allegations in their Complaint. The Complaint states as follows:

> In this part of the Complaint, Plaintiffs assert strict liability and negligence claims under Sections 11, 12 and 15 of the Securities Act on behalf of the Class. These claims are asserted based on false statements and omissions made in connection with GTAT's December 2013 Offerings. Plaintiffs incorporate the above paragraphs by reference, **but expressly disclaim any allegations of scienter or fraud for these Securities Act claims.**

CC ¶¶ 327 (emphasis added); see also ¶ 352 ("Those allegations are incorporated herein except that Plaintiffs expressly disclaim any allegations of fraud in these non-fraud Securities Act claims."). In an effort to avoid the heightened pleading standards that accompany an allegation of fraud, Plaintiffs have pled themselves out of court. For this reason alone, Plaintiffs' Section 11 claims based on forward-looking statements should be dismissed.[8]

### C. Plaintiffs Fail To Allege Any Other Misrepresentation Or Omission Of Material Fact.

As the Outside Director Defendants explain in their Moving Brief, the remaining statements that Plaintiffs challenge are immaterial puffery, which are not actionable under well-established principles of securities law. See Outside Dir. Defs. MB 47-48; see also 15 U.S.C. 77z-2(c)(1)(A)(ii) (no liability where forward-looking statement is "immaterial"). In their Opposition Brief, Plaintiffs do not respond directly to the Outside Director Defendants' argument, but refer the Court to Plaintiffs' arguments in response to the Officer Defendants' similar argument respecting the puffery doctrine. As set forth in the Officers Defendants' Reply Brief, which the Outside Director Defendants adopt and incorporate by reference herein,

---

[8] Plaintiffs' effort to rewrite their Complaint by suggesting that Paragraph 24 somehow constitutes an "actual knowledge" allegation (see OB 85) does not cure Plaintiffs' fatal pleading defect. Plaintiffs do not allege, and have expressly disclaimed, that their Section 11 claims are based on any defendants' scienter, and they cannot amend their Complaint by way of their Opposition Brief. Doe v. Univ. of Mass.-Amherst, No. 14-cv-30143, 2015 WL 4306521, at *1 n.1 (D. Mass. July 14, 2015) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. In ruling on Defendant's motion to dismiss, the court considers only those legal theories set forth in Plaintiff's complaint.") (alteration and internal citation omitted).

Plaintiffs' arguments are unavailing, and their claims based on the remaining challenged statements should be dismissed as immaterial, as a matter of law.  See Officer Defs. RB 15-18.

## II. PLAINTIFFS' "CONTROL PERSON" CLAIMS AGAINST THE OUTSIDE DIRECTOR DEFENDANTS SHOULD BE DISMISSED.

In their Opposition Brief, Plaintiffs double down on their rote allegations of control, arguing that they have sufficiently alleged control liability "because [the Outside Director Defendants] were Directors of GTAT during the relevant time period and signed GTAT's Registration Statement" and "nothing more is required."  OB 91-92. [9]  Contrary to Plaintiffs' assertions, such generalized, boilerplate allegations of control are insufficient to sustain a control person claim against any defendant, let alone against an outside director.  See Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002) (affirming dismissal of control person claims and requiring that alleged controlling person "actually exercise control over the company" and "actively participat[e] in the decisionmaking processes of the corporation"); see also In re Novell, Inc. S'holder Litig., No. 10-cv-12076, 2012 WL 458500, at *6 (D. Mass. Feb. 10, 2012) (dismissing control person claims for the same reasons); In re Tyco Int'l, Ltd., 2007 DNH 073, at *22-23, No. 04-cv-1336, 2007 WL 1687775, at *8 (D.N.H. June 11, 2007) (same).

Unable sufficiently to allege control, Plaintiffs distort the First Circuit's decision in In re Cabletron and cite two district court cases from outside the First Circuit.  OB 92 (citing In re Cabletron Sys., Inc., 311 F.3d 11 (1st Cir. 2002); In re Am. Bus. Fin. Servs., Inc. Sec. Litig., No. 05-cv-232, 2007 WL 81937 (E.D. Pa. Jan. 9, 2007); In re Washington Mut., Inc. Sec. Derivative & ERISA Litig., 259 F.R.D. 490 (W.D. Wash. 2009)).  In Cabletron, the parties did not brief the issue of control person liability and, therefore, the court remanded that issue to the district court. 311 F.3d at 41.  Plaintiffs' other cases apply law that is in direct conflict with First Circuit authority.  Compare Am. Bus. Fin. Servs., 2007 WL 81937, at *12 and Washington Mut., 259 F.R.D. at 509 with Novell, 2012 WL 458500, at *6 (refusing to apply Tenth Circuit's "power to

---

[9] Plaintiffs do not dispute that, in the event they have failed adequately to allege an underlying violation of the securities law, their secondary liability claim against the Outside Director Defendants as control persons must be dismissed as well.  Outside Dir. Defs. MB 22-23.

control" standard in light of First Circuit's requirement that defendant "actually exercise control") (citing Aldridge, 284 F.3d at 85).

Plaintiffs have no answer to the First Circuit law applied in Novell and Tyco. Outside Dir. Defs. MB 23. The Court's decision in Tyco is particularly instructive, as it rejected as contrary to controlling First Circuit authority the exact same type of defective status allegations that Plaintiffs make here. 2007 WL 1687775, at *8. Like Plaintiffs here, the Tyco plaintiff argued that the defendant, an outside director, was subject to control person liability because: (1) he was a director and major shareholder; (2) he signed false SEC filings; and (3) "by virtue of his position with the company, [he] possessed the power and authority to control the contents of Tyco's publicly filed financial reports, press releases, and presentations to securities analysts." Id. Judge Barbadoro rejected those allegations as "simply insufficient" to establish control person liability:

> Although plaintiffs conclusorily state that "each of the Individuals [sic] Defendants had direct involvement in the day-to-day operations of the Company," **they do not allege how [the outside director] exercised any control at Tyco or explain why his position as an outside director establishes him as a control person**. These bare assertions and generalized allegations are **simply insufficient to establish that [the outside director] exercised control over the company** to sustain plaintiffs' control person claims against him.

Id. (emphasis added). Having failed to allege actual control on the part of the Outside Director Defendants, Plaintiffs' Section 15 control person claim should be dismissed.

### III. PLAINTIFFS LACK STANDING TO PURSUE CLAIMS ARISING OUT OF GTAT'S SECONDARY OFFERING OF COMMON STOCK.

In their Opposition Brief, Plaintiffs concede, as they must, that the Securities Act Plaintiffs – Palisade and Highmark – did not purchase GTAT common stock in the December 2013 Offering (OB 87-90), but rather purchased senior notes in February 2014 and engaged in significant short sales of GTAT common stock, which realized a **profit** of over $1 million. Plaintiffs' argument that they are "typical" of purchasers of GTAT common stock, and therefore possess standing because they purchased senior notes runs headlong into controlling First Circuit law. See Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632

F.3d 762, 771 (1st Cir. 2011) (holding a prospective plaintiff must have purchased the particular security at issue to have standing to bring a Section 11 claim). Plaintiffs make no attempt to distinguish Nomura in their Opposition Brief, and it forecloses both their argument and their Securities Act claims. See also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 381 F. Supp. 2d 192, 245-46 (S.D.N.Y. 2004) (holding that plaintiffs had no standing where plaintiffs did not suffer losses on their transactions). In addition, Plaintiffs, as **sellers** of GTAT common stock, necessarily cannot trace any **purchase** of GTAT common stock back to the December Offering. Plaintiffs lack standing for this reason, as well. Outside Dir. Defs. MB 23-24.

## CONCLUSION

For all of the forgoing reasons, as well as all of the reasons noted in the GTAT Defendants' briefing on their motions to dismiss, the Complaint should be dismissed, with prejudice.

Respectfully submitted,

J. MICHAL CONAWAY, KATHLEEN A. COTE, ERNEST L. GODSHALK, MATTHEW E. MASSENGILL, MARY PETROVICH, ROBERT E. SWITZ, NOEL G. WATSON AND THOMAS WROE, JR.,

By their attorneys,

*/s/ Jordan D. Hershman*
Jordan D. Hershman (admitted *pro hac vice*)
Jason D. Frank (admitted *pro hac vice*)
William R. Harb (admitted *pro hac vice*)
Emily E. Renshaw (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA  02110-1726
Tel (617) 951-8455
Fax (617) 951-8736
jordan.hershman@morganlewis.com
jason.frank@morganlewis.com
william.harb@morganlewis.com
emily.renshaw@morganlewis.com

Dated:  March 2, 2016

-15-

- and -

*/s/ Brian J.S. Cullen*
Brian J.S. Cullen, Bar No. 11265
**CULLENCOLLIMORE, PLLC**
10 East Pearl Street
Nashua, NH 03060
Tel (603) 881-5500
bcullen@cullencollimore.com

**CERTIFICATE OF SERVICE**

I, Jordan D. Hershman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 2, 2016.

Dated:  March 2, 2016

                                      */s/ Jordan D. Hershman*
                                      Jordan D. Hershman