# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ADAM S. LEVY on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>THOMAS GUTIERREZ, RICHARD J. GAYNOR, RAJA BAL, J. MICHAL CONAWAY, KATHLEEN A. COTE, ERNEST L. GODSHALK, MATTHEW E. MASSENGILL, MARY PETROVICH, ROBERT E. SWITZ, NOEL G. WATSON, THOMAS WROE, JR., MORGAN STANLEY & CO. LLC, GOLDMAN, SACHS & CO., AND CANACCORD GENUITY INC.,<br><br>　　　　　Defendants. | No. 1:14-cv-00443-JL<br><br><br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR (I) PRELIMINARY APPROVAL OF INDIVIDUAL DEFENDANT AND UNDERWRITER DEFENDANT SETTLEMENTS, (II) CERTIFICATION OF INDIVIDUAL DEFENDANT AND UNDERWRITER DEFENDANT SETTLEMENT CLASSES, AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASSES**

ORR & RENO, P.A.
Jennifer A. Eber N.H. Bar No. 8775
Jeffrey C. Spear N.H. Bar No. 14938
45 S. Main Street, PO Box 3550
Concord, NH 03302-3550
Tel: (603) 224-2381
Fax: (603) 224-2318

BERNSTEIN LITOWITZ BERGER
　& GROSSMANN LLP
John C. Browne
Lauren Ormsbee
Ross Shikowitz
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 554-1400
Fax:  (212) 554-1444

Dated:  January 26, 2018

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND OF THE LITIGATION.......................................................... 3

III.  THE PROPOSED SETTLEMENTS WARRANT PRELIMINARY APPROVAL........... 7

    A.  The Settlements Are The Result Of Good Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel ............... 9

    B.  The Stage Of The Proceedings Supports Preliminary Approval ......................... 10

    C.  The Number And Nature Of Objections .............................................................. 11

    D.  The Substantial Benefits For The Settlement Classes, Weighed Against Litigation Risks, Support Preliminary Approval  of the Settlements .................. 11

IV.  THE SETTLEMENT CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ................................................................................ 12

    A.  The Settlement Classes Satisfy The Requirements Of Rule 23(a) ...................... 13

        1.  The Settlement Class Members Are Too Numerous To Be Joined ......... 14

        2.  There Are Common Questions Of Law And Fact ................................... 15

        3.  Plaintiffs' Claims Are Typical Of Those Of The Settlement Classes .................................................................................................... 16

        4.  Plaintiffs Will Fairly And Adequately Protect The Interests Of The Settlement Classes ........................................................................... 17

    B.  The Settlement Classes Satisfy The Requirements Of Rule 23(b)(3)................... 18

        1.  Common Legal And Factual Questions Predominate.............................. 18

        2.  A Class Action Is Superior To Other Methods Of Adjudication.............. 19

V.  NOTICE TO THE SETTLEMENT CLASSES SHOULD BE APPROVED .................. 20

VI.  PROPOSED SCHEDULE ............................................................................... 21

VII.  CONCLUSION................................................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................................13, 18

*Bussie v. Allmerica Fin. Corp.*,
  50 F. Supp. 2d 59 (D. Mass. 1999) ....................................................................................10

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  177 F.R.D. 54 (D. Mass. 1997)...................................................................................11, 15

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  No. 96-10706, 1997 WL 888989 (D. Mass. June 13, 1997)...........................................20, 21

*Glass Dimensions, Inc. v. State Street Bank & Trust Co.*,
  285 F.R.D. 169 (D. Mass. 2012).....................................................................................16

*Grace v. Perception Tech. Corp.*,
  128 F.R.D. 165 (D. Mass. 1989).....................................................................................16

*Hochstadt v. Boston Scientific Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ..................................................................................8

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.*,
  723 F.2d 169 (1st Cir. 1983)............................................................................................8

*In re Boston Scientific Corp. Sec. Litig.*,
  604 F. Supp. 2d 275 (D. Mass. 2009) ....................................................................15, 16, 17

*In re Chipcom Corp. Sec. Litig.*,
  No. 95-11114, 1996 WL 1057531 (D. Mass. Apr. 29, 1996)............................................20, 21

*In re Credit Suisse-AOL Sec. Litig.*,
  253 F.R.D. 17 (D. Mass. 2008)........................................................................................16

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
  275 F.R.D. 382 (D. Mass. 2011).................................................................................16, 19

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)....................................................9

*In re Lupron Mktg. & Sales Practices Litig.*,
  228 F.R.D. 75 (D. Mass. 2005)........................................................................................8

*In re Lupron Mktg. & Sales Practices Litig.*,
  345 F. Supp. 2d 135 (D. Mass. 2004) ............................................................................9, 13

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..............................................13, 19

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................................................18

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................................................17, 18

*In re Puerto Rican Cabotage Antitrust Litig.*,
    269 F.R.D. 125 (D.P.R. 2010) ..................................................................................................9

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)...........................................................................................8, 13

*In re Sonus Networks, Inc. Sec. Litig.*,
    247 F.R.D. 244 (D. Mass. 2007)............................................................................................15

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007).........................................................................................8

*John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*,
    No. 01-10729, 2004 WL 438790 (D. Mass. Mar. 9, 2004) ....................................................19

*Kirby v. Cullinet Software, Inc.*,
    116 F.R.D. 303 (D. Mass. 1987)............................................................................................15

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000)...........................................................................................9, 10

*Scott v. First Am. Title Ins. Co.*,
    No. 06-cv-286, 2008 WL 4820498 (D.N.H. Nov. 5, 2008)..................................................8, 9

*Swack v. Credit Suisse First Boston*,
    230 F.R.D. 250 (D. Mass. 2005)........................................................................................14, 16

*U.S. v. Comunidades Unidas Contra La Contaminacion*
    204 F.3d 275 (1st Cir. 2000).............................................................................................7, 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................................................9, 20

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000).................................................................................................19

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)...................................................................................................13

**OTHER AUTHORITIES**

FED. JUDICIAL CTR., MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) § 21.632 ........................8

Fed. R. Civ. P. Rule 23 ........................................................................................................... *passim*

Lead Plaintiff Douglas Kurz ("Lead Plaintiff") and additional named plaintiffs Strategic Master Fund (Cayman) Limited and Highmark Limited, in respect of its Segregated Account Highmark Fixed Income 2 (collectively, the "Securities Act Plaintiffs," and together with Lead Plaintiff, "Plaintiffs") have reached two proposed partial settlements in the above-captioned securities class action (the "Action"): (i) a proposed settlement with the Individual Defendants[1] for $27,000,000 in cash (the "Individual Defendant Settlement"); and (ii) a proposed settlement with the Underwriter Defendants[2] for $9,700,000 in cash (the "Underwriter Defendant Settlement").[3] Lead Plaintiff respectfully moves this Court for an order: (i) preliminarily approving the proposed Settlements; (ii) certifying the proposed Settlement Classes, certifying Lead Plaintiff and Plaintiffs as class representatives, and appointing Lead Counsel Bernstein Litowitz Berger & Grossmann LLP as class counsel for purposes of the Settlements; (iii) approving the form and manner of providing notice of the Settlements to the Settlement Classes; and (iv) scheduling a hearing at which the Court will consider final approval of the Settlements.

## I.      INTRODUCTION

The proposed Individual Defendant Settlement, if approved by the Court, will resolve all claims asserted against the Individual Defendants in the Action in exchange for a cash payment of

---

[1] The "Individual Defendants" consist of defendants Thomas Gutierrez, Richard Gaynor, Kanwardev Raja Singh Bal, Hoil Kim, Daniel W. Squiller, J. Michal Conaway, Kathleen A. Cote, Ernest L. Godshalk, Matthew E. Massengill, Mary Petrovich, Robert E. Switz, Noel G. Watson, and Thomas Wroe, Jr.

[2] The "Underwriter Defendants" consist of defendants Morgan Stanley & Co. LLC, Goldman, Sachs & Co. LLC (f/k/a Goldman, Sachs & Co.), and Canaccord Genuity Inc.

[3] All capitalized terms used herein that are not otherwise defined herein shall have the meanings provided in (i) the Stipulation and Agreement of Settlement With Individual Defendants dated January 26, 2018 (the "Individual Defendant Stipulation"), which is attached as Exhibit 1 to the Motion, and (ii) the Stipulation and Agreement of Settlement With Settling Underwriter Defendants dated August 18, 2017, and the Supplement thereto dated January 26, 2018 (the "Underwriter Defendant Stipulation"), which is attached as Exhibit 2 to the Motion. The Individual Defendant Stipulation and the Underwriter Defendant Stipulation are collectively referred to as the "Stipulations".

$27 million, and the proposed Underwriter Defendant Settlement, if approved by the Court, will resolve all claims asserted against the Underwriter Defendants in the Action in exchange for a cash payment of $9.7 million.[4]   The proposed Individual Defendant Settlement will settle claims brought under both the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") relating to GT Advanced Technologies Inc.'s ("GTAT" or the "Company") secondary public offering of GTAT Common Stock and initial public offering of GTAT Senior Notes in December 2013 (respectively, "Common Stock Secondary Offering" and "Senior Notes Offering") and to the trading of GTAT Common Stock and GTAT Senior Notes during the Class Period.   The proposed Underwriter Defendant Settlement will settle claims brought under the Securities Act only that relate solely to the Common Stock Secondary Offering and the Senior Notes Offering.

Lead Plaintiff now requests that the Court preliminarily approve the proposed Settlements. Entry of the proposed Preliminary Approval Order will begin the process of considering the proposed Settlements by authorizing notice of the Settlements' terms and conditions to Settlement Class Members. A final approval hearing (the "Settlement Hearing") will then be conducted so that the settling parties and Settlement Class Members may present arguments and evidence for and against final approval of the proposed Settlements, and the Court will then make a final determination as to whether the respective Settlements are fair, reasonable, and adequate.[5] To facilitate this process, the proposed Preliminary Approval Order, attached as Exhibit 3 to the Motion, will, among other things:

---

[4] The proposed Settlements do not settle any of the claims asserted against the remaining defendant in the Action, Apple, Inc. ("Apple" or the "Non-Settling Defendant"), which Lead Plaintiff continues to prosecute.

[5] Final approval of each proposed Settlement will be considered independently of the other Settlement, and will only resolve claims against the Defendants covered by that Settlement.

(i)     preliminarily approve the Individual Defendant Settlement and the Underwriter Defendant Settlement on the terms set forth in the respective Stipulations;

(ii)    certify the Individual Defendant Settlement Class (as defined below) and the Underwriter Defendant Settlement Class (as defined below) for settlement purposes only;

(iii)   approve the form and content of the Notice, Claim Form, and Summary Notice, attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order;

(iv)    find that the procedures established for distribution of the Notice and Claim Form and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4, as amended (the "PSLRA"), and all other applicable law and rules; and

(v)     schedule the Settlement Hearing and set out a schedule and procedures for: disseminating the Notice and Claim Form and publishing the Summary Notice; requesting exclusion from the Settlement Classes; objecting to the Settlements, the proposed Plan of Allocation, and/or Lead Counsel's application for attorneys' fees and litigation expenses; and submitting papers in support of final approval of the Settlement.

As explained herein, Lead Plaintiff respectfully submits that the proposed Settlements warrant preliminary approval in light of the substantial benefits achieved by the Settlements, the significant risks of continued litigation of the claims asserted against the Settling Defendants, and the fact that the Settlements are the result of arm's-length negotiations between experienced counsel. Lead Plaintiff further submits that the Court should, for purposes of the respective Settlements only, certify the Settlement Classes, certify Plaintiffs as class representatives, and appoint Lead Counsel as class counsel, under Rule 23.

## II.     BACKGROUND OF THE LITIGATION

Beginning on or about October 9, 2014, GTAT investors filed multiple putative securities class action complaints in the United States District Court for the District of New Hampshire (the "Court"). By Order dated February 4, 2015, the Court consolidated the related actions into the

Action, and on May 20, 2015, the Court entered an Order appointing Douglas Kurz as Lead Plaintiff in the Action, and approving Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel and Orr & Reno, P.A. as Liaison Counsel.

On July 20, 2015, Lead Plaintiff filed and served the Consolidated Class Action Complaint (the "Complaint"), which included the Securities Act Plaintiffs and Vance K. Opperman as additional named plaintiffs. The Complaint asserted (i) claims under Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, against Defendants Bal, Gaynor, and Gutierrez; (ii) claims under Section 20(a) of the Exchange Act against Defendants Bal, Gaynor, Gutierrez, Kim, Squiller, and Apple; (iii) claims under Section 11 of the Securities Act against Defendants Gaynor, Bal, Gutierrez, Conaway, Cote, Godshalk, Massengill, Petrovich, Switz, Watson, Wroe, and the Underwriter Defendants; (iv) claims under Section 12(a)(2) of the Securities Act against the Underwriter Defendants; and (v) claims under Section 15 of the Securities Act against Defendants Gaynor, Kim, Gutierrez, Squiller, Conaway, Cote, Godshalk, Massengill, Petrovich, Switz, Watson, Wroe, and Apple.[6]

On October 7, 2015, Defendants filed and served their motions to dismiss the Complaint. On December 18, 2015, Lead Plaintiff filed and served his papers in opposition to the motions to dismiss; on March 2, 2016, Defendants filed and served their reply papers; and, on March 22, 2016, Lead Plaintiff filed his sur-reply.

Beginning in late 2016, Lead Counsel and counsel for Underwriter Defendants began to discuss a potential settlement of the claims asserted against the Underwriter Defendants in the Action. Following extensive, arm's-length negotiations, Plaintiffs and the Underwriter Defendants

---

[6] As a result of the Company's filing for bankruptcy protection, GTAT was not named as a defendant in the Action.

4

reached an agreement-in-principle to settle the Action as against the Underwriter Defendants for $9,700,000 in cash, which was memorialized in a Memorandum of Understanding (the "Underwriter Defendant MOU") executed on March 17, 2017.

Because of the mandatory PSLRA stay of discovery pending resolution of the motions to dismiss, Lead Plaintiff had not been able to conduct formal discovery in the Action at the time the parties agreed to settle the claims asserted against the Underwriter Defendants. Pursuant to the Underwriter Defendant MOU, the parties' agreement to settle was conditioned on Lead Plaintiff confirming the fairness, reasonableness, and adequacy of the Underwriter Settlement based on due-diligence discovery to be provided by the Underwriter Defendants. Following the execution of the Underwriter Defendant MOU, Lead Counsel reviewed, as part of the due-diligence discovery provided by the Underwriter Defendants, approximately 13,500 documents totaling approximately 70,000 pages from the files of the Underwriter Defendants concerning the December 2013 initial offering of GTAT Senior Notes and secondary offering of GTAT Common Stock, and, based on this review, Plaintiffs and Lead Counsel confirmed that the Underwriter Defendant Settlement is fair, reasonable, and adequate.

On May 4, 2017, the Court entered its Memorandum Opinion denying in part and granting in part the motions to dismiss filed by the Individual Defendants and Apple, and denying the Underwriter Defendants' motion to dismiss without prejudice to their ability to re-submit the motion if necessary.[7] Plaintiffs' remaining claims following the Court's ruling on Defendants' motions to dismiss include: (i) claims under Section 10(b) of the Securities Exchange Act against

---

[7] Upon reaching their agreement-in-principle to settle the Action, the parties to the Underwriter Defendant Settlement informed the Court that they had reached a settlement and requested that the Court refrain from ruling on the Underwriter Defendants' motion to dismiss while the parties engaged in due-diligence discovery.  Accordingly, in its May 4, 2017 Memorandum Opinion, the Court denied the Underwriter Defendants' motion to dismiss without prejudice to their ability to re-submit the motion if necessary.

Defendants Bal, Gaynor, and Gutierrez; (ii) claims under Section 20(a) of the Exchange Act against Defendants Bal, Gaynor, Gutierrez, Kim, and Squiller; (iii) a claim under Section 20(a) of the Exhange Act against Apple; (iv) claims under Section 11 of the Securities Act against Defendants Gaynor, Bal, Gutierrez, Conaway, Cote, Godshalk, Massengill, Petrovich, Switz, Watson, Wroe, and the Underwriter Defendants; (v) claims under Section 12(a)(2) of the Securities Act against the Underwriter Defendants; (vi) claims under Section 15 of the Securities Act against Defendants Gutierrez, Gaynor, Kim, and Squiller; and (vii) a claim under Section 15 of the Securities Act against Apple.

On August 18, 2017, Plaintiffs and the Underwriter Defendants entered into the Underwriter Defendant Stipulation setting forth the final terms and conditions of the Underwriter Defendant Settlement, and on September 11, 2017, Lead Plaintiff moved for preliminary approval of the Underwriter Defendant Settlement.

On October 2, 2017, Lead Counsel and the remaining Defendants' counsel participated in a full day mediation session before retired United States District Court Judge Layn R. Phillips (the "Mediator"). In advance of that session, the parties exchanged detailed mediation statements and exhibits to the Mediator, which addressed the issues of both liability and damages. As a result of extensive, arm's-length negotiations at the mediation session, Lead Plaintiff and the Individual Defendants reached an agreement in principle to settle the Action as against the Individual Defendants for $27,000,000 in cash, which was memorialized in a Settlement Term Sheet (the "Individual Defendant Term Sheet") executed on October 13, 2017.

On November 10, 2017, Lead Plaintiff and the Individual Defendants filed a Notice of Partial Settlement which informed the Court that they had reached an agreement-in-principle to settle the claims against the Individual Defendants, requested that the Court adjourn the Individual

Defendants' deadline to file their Answer(s), and asked the Court to adjudicate preliminary approval of the Individual Defendant Settlement together with preliminary approval of the Underwriter Defendant Settlement. On November 13, 2017, the Court granted the relief requested in the Notice of Partial Settlement, and by Orders dated December 20, 2017 and January 16, 2017, granted the settling parties' request to extend the deadline by which they would finalize the settlement documentation for the Individual Defendant Settlement.

On January 26, 2018, Plaintiffs and the Individual Defendants entered into the Individual Defendant Stipulation setting forth the final terms and conditions of the Individual Defendant Settlement. In connection with the Individual Defendant Settlement, the Individual Defendants agreed to produce, and have produced, within twenty (20) days following the signing of the Individual Defendant Term Sheet, discovery to Lead Plaintiff, consisting of copies of (i) all documents produced by the Individual Defendants directly or on their behalf by their counsel to the Trustee in *Davis v. Gutierrez, et al.*, Civil Action No. 1:17-cv-147-JL (D.N.H.) (the "*Davis* Action"); (ii) all transcripts of depositions in the Individual Defendants' possession, custody or control taken in the *Davis* Action and in any investigatory proceeding relating to these matters; and (iii) all documents produced by the Individual Defendants directly or on their behalf by their counsel to the Securities Exchange Commission ("SEC") or any other investigative authority. The Individual Defendants also agreed that for a period of one hundred-twenty (120) calendar days following the filing of the motion for preliminary approval of the Individual Defendant Settlement, the Individual Defendants will make themselves available for a reasonable number of depositions to occur at an agreed upon time and location convenient to the parties.

## III.    THE PROPOSED SETTLEMENTS WARRANT PRELIMINARY APPROVAL

As a matter of public policy, settlement is a highly favored means of resolving disputes. *See U.S. v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000);

*Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F.2d 169, 173 n.1 (1st Cir. 1983) (settlement agreements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits'") (internal quotations omitted). This policy is especially applicable to complex class action litigation. *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law favors class action settlements."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 259 (D.N.H. 2007) ("public policy generally favors settlement – particularly in [large] class actions"); *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010) (recognizing that "policy encourages settlements") (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009)).

Under Rule 23(e) of the Federal Rules of Civil Procedure, judicial review of a proposed class action settlement consists of a two-step process: preliminary approval and a subsequent settlement fairness hearing. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 57 (D. Mass. 2005) ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.") (quoting FED. JUDICIAL CTR., MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) § 13.14 at 171 ("MCL")). Given this two-step process, at this stage of the proceedings, the Court is not required to undertake an in-depth consideration of the relevant factors for final approval. Instead, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MCL § 21.632.

For purposes of preliminary approval, the Court must determine whether the proposed settlement "appears to meet" the fair, reasonable and adequate standard that will be used at final

approval and, therefore, falls "within the range of possible approval." *Scott v. First Am. Title Ins. Co.*, No. 06-cv-286, 2008 WL 4820498, at *3 (D.N.H. Nov. 5, 2008); *see also In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004); *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010). Lead Plaintiff requests that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlements. As detailed below, both Settlements clearly satisfy the standards for preliminary approval.

### A.    The Settlements Are The Result Of Good Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (same).

Here, the parties agreed to the respective Settlements only after protracted arm's-length negotiations, which, with respect to the Individual Defendant Settlement, included a mediation process overseen by a highly respected mediator of complex securities class actions, the Honorable Layn R. Phillips. Moreover, given that settling parties briefed motions to dismiss and received the Court's order on the motions to dismiss, the parties and their counsel are well-informed about the strengths and weaknesses of the claims and defenses in the Action.

Further, the judgment of Lead Counsel – who are highly experienced in securities class action litigation – that the Settlements are a fair and reasonable resolution of the Action as against the respective Settling Defendants should be given considerable weight. *See, e.g.*, *Rolland v.*

*Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999).

### B.     The Stage Of The Proceedings Supports Preliminary Approval

As will be set forth in further detail prior to the Settlement Hearing, Lead Plaintiff's decisions to enter into the respective Settlements were based on a thorough understanding of the strengths and weaknesses of Plaintiffs' claims against the Settling Defendants, which included: (i) conducting a thorough investigation into the claims of the Settlement Classes, which included numerous interviews with former GTAT employees and a thorough review of publicly available information; (ii) drafting a detailed amended consolidated complaint; and (iii) briefing the motions to dismiss filed in the Action. In addition, the information exchanged by the settling parties in connection with the settlement negotiations provided Lead Plaintiff with a further basis upon which to assess the relative strengths and weaknesses of Lead Plaintiff's position and the position of the Settling Defendants in the Action.

In addition, as discussed above, Lead Plaintiff completed substantial due diligence discovery provided by the Underwriter Defendants, which included the review of approximately 70,000 pages of documents produced by those Defendants, and based on this discovery, Lead Plaintiff and Lead Counsel have confirmed that the Underwriter Defendant Settlement is fair, reasonable, and adequate to the Underwriter Defendant Settlement Class. Also, with respect to the Individual Defendant Settlement, Lead Counsel has reviewed and analyzed the documents obtained from the Individual Defendants, which consisted of copies of documents and deposition transcripts related to the *Davis* Action and documents produced by the Individual Defendants to the SEC. Accordingly, the extensive investigation and litigation of the claims asserted in the

Action, together with the substantial due diligence discovery produced by the Underwriter Defendants and the documents obtained from the Individual Defendants, provided Lead Plaintiff with a strong basis to assess the strengths and weaknesses of the claims against both sets of Settling Defendants. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 67 (D. Mass. 1997) ("'The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims.'") (quoting *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980)).

### C.    The Number And Nature Of Objections

At the current stage of the litigation, prior to class notice, no Settlement Class Members have indicated any objections to the proposed Settlements.

### D.    The Substantial Benefits For The Settlement Classes, Weighed Against Litigation Risks, Support Preliminary Approval of the Settlements

The proposed Individual Defendant Settlement provides a $27,000,000 cash recovery for the benefit of the Individual Defendant Settlement Class, and the proposed Underwriter Defendant Settlement provides a $9,700,000 cash recovery for the benefit to the Underwriter Defendant Settlement Class. As will be explained in greater detail in advance of the Settlement Hearing, these recoveries provide a substantial benefit for the respective Settlement Classes in light of the risks posed by continued litigation. For example, with respect to claims under Section 10(b) of the Exchange Act, Plaintiffs faced significant risks in proving that the alleged false statements made by the Individual Defendants during the Class Period were intentionally or recklessly made. Also, with respect to claims under Section 11 of the Securities Act, Plaintiffs faced significant challenges associated with establishing that there were material misstatements and omissions in the public securities offering documents at issue, as well as the risk that the Underwriter Defendants would

be able to establish due diligence or related defenses. In addition, Plaintiffs faced challenges with respect to proving loss causation and class-wide damages. Furthermore, with respect to the Individual Defendants, Lead Plaintiff recognized that there was a significant risk that these Defendants would be unable to pay in whole or in part any ultimate judgment in this case.

In the context of these risks, Lead Plaintiff and Lead Counsel believe that the proposed Settlements are an excellent result for the respective Settlement Classes, and that preliminary approval of both Settlements is appropriate.

## IV.   THE SETTLEMENT CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In granting preliminary settlement approval, the Court should also certify the Settlement Classes for purposes of the respective Settlements under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

The proposed Individual Defendant Settlement Class, which has been stipulated to by the parties to the Individual Defendant Settlement, consists of:

> [A]ll persons and entities who or which from November 5, 2013 through 9:40 a.m. Eastern Standard Time on October 6, 2014, inclusive (the "Class Period") purchased or otherwise acquired publicly traded GTAT common stock ("GTAT Common Stock") and/or publicly traded GTAT 3.00% Convertible Senior Notes Due 2020 ("GTAT Senior Notes"), purchased or otherwise acquired publicly traded call options on GTAT common stock ("GTAT Call Options"), and/or sold (wrote) publicly traded put options on GTAT common stock ("GTAT Put Options"), and were damaged thereby.

Individual Defendant Stipulation ¶ 1(ccc).

The proposed Underwriter Defendant Settlement Class, which has been stipulated to by the parties to the Underwriter Defendant Settlement, consists of:

> [A]ll persons and entities who or which from November 5, 2013 through 9:40 a.m. Eastern Standard Time on October 6, 2014, inclusive (the "Class Period") purchased or otherwise acquired (i) GTAT Senior Notes pursuant or traceable to GTAT's December 2013 registration statement and prospectus supplement for the GTAT Senior Notes' offering (the "Senior Notes Offering") and/or (ii) shares of GTAT Common Stock pursuant or traceable to GTAT's December 2013

registration statement and prospectus supplement for the secondary offering of GTAT common stock (the "Common Stock Secondary Offering").

Underwriter Defendant Stipulation ¶ 1(xx).[8]

It is appropriate to certify a class action for settlement purposes. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04-8144, 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009). Indeed, "the certification of a settlement class can provide significant benefits to class members while enabling defendants to achieve an expedited and final resolution of multiple suits." *In re Lupron*, 345 F. Supp. 2d at 137. While a settlement class, like other certified classes, must satisfy the elements of Rules 23(a) and (b), the manageability concerns of Rule 23(b)(3) are not at issue in certification of a settlement class. *See Amchem Prods.*, 521 U.S. at 593; *In re Relafen Antitrust Litig.*, 231 F.R.D. at 68.

### A.   The Settlement Classes Satisfy The Requirements Of Rule 23(a)

Certification of a class is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

---

[8] Excluded from the Settlement Classes are Defendants; GTAT; the affiliates and subsidiaries of the Underwriter Defendants, GTAT, and Apple; the Officers, directors, and partners of the Underwriter Defendants, GTAT, and Apple during the Class Period; members of the Immediate Family of any excluded person; the heirs, successors, and assigns of any excluded person or entity; and any entity in which any excluded person or entity has or had during the Class Period a controlling interest; *provided, however*, that any Investment Vehicle shall not be deemed an excluded person or entity by definition. Individual Defendant Stipulation ¶ 1(ccc), Underwriter Defendant Stipulation ¶ 1(xx).

1.        **The Settlement Class Members Are Too Numerous To Be Joined**

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a). This factor can be shown by the approximate number of potential class members. "[C]ourts may draw reasonable inferences from the facts presented to find the requisite numerosity" and routinely find the numerosity requirement satisfied based on the number of shares that were outstanding and the average trading volume during the class period. *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005) (internal quotations and citations omitted). Here, both the Individual Defendant Settlement Class and the Underwriter Defendant Settlement Class easily satisfy the numerosity requirement.

The Individual Defendant Settlement Class is comprised of persons and entities that purchased or acquired publicly traded GTAT common stock, Senior Notes, and/or call options on GTAT common stock, as well as sellers of publicly traded put options on GTAT common stock, over an eleventh month period.  Throughout the Class Period, GTAT common shares were actively traded on the NASDAQ. As of June 24, 2014, GTAT had approximately 138 million shares of common stock outstanding, and there were $214 million in face amount of GTAT Senior Notes registered in the December 2013 Senior Notes Offering that were actively traded, with over $581 million in face amount of the Notes traded in the open market following the offering. Complaint ¶ 292. Thus, while the precise number of members of the Individual Defendant Settlement Class cannot be identified with specificity at this time, it is likely to be at least in the hundreds or thousands.

The Underwriter Defendant Settlement Class, which is a subset of the Individual Defendant Settlement Class, consists of purchasers or acquirors of GTAT Senior Notes pursuant or traceable to the Senior Notes Offering and purchasers or acquirors of GTAT common stock pursuant or

traceable to Common Stock Secondary Offering during the Class Period. Both of the Offerings were substantial in size. As stated above, there were $214 million in face amount of GTAT Senior Notes registered in the Senior Notes Offering that were actively traded, with over $581 million in face amount of the Notes traded in the open market following the offering. Complaint ¶¶ 292, 329. The Common Stock Secondary Offering was an offering of 9,942,196 shares of GTAT common stock which raised approximately $86 million. Thus, while at this time it not possible to specify the precise number of members of the Underwriter Settlement Class, it is also likely to be at least in the hundreds or thousands.

Accordingly, the Settlement Classes are sufficiently numerous that Rule 23(a)(1) is satisfied with respect to both classes. *See, e.g.*, *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987); *In re Sonus Networks, Inc. Sec. Litig.*, 247 F.R.D. 244, 248 (D. Mass. 2007).

## 2. There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class. *See In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 281 (D. Mass. 2009) ("It is relatively easy for a plaintiff to show commonality because '[a] single common legal or factual issue can suffice' to satisfy the requirement") (quoting *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003)) (emphasis in original). The Rule 23(a)(2) commonality test has been described as a "low hurdle," and easily satisfied. *See Duhaime*, 177 F.R.D. at 63.

Here, as alleged in the Complaint, the common questions of law and fact include:

- whether Defendants violated the Securities Act and/or the Exchange Act;
- whether Defendants omitted and/or misrepresented material facts, including in the Registration Statement and prospectuses for the Offerings;
- whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions alleged in the Complaint;
- whether the prices of GTAT Securities were artificially inflated (or deflated);

- whether the Underwriter Defendants could sustain their burden of establishing an affirmative defense under the applicable statute; and

- whether members of the Settlement Classes sustained damages as a result of the alleged misconduct and, if so, the proper measure of damages.

*See* Complaint ¶ 293. Courts in this district have found that similar questions of law and fact easily meet the commonality requirements. *See, e.g.*, *In re Boston Scientific*, 604 F. Supp. 2d at 281; *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass. 2011); *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 22 (D. Mass. 2008); *Swack*, 230 F.R.D. at 260; *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989).

### 3.    Plaintiffs' Claims Are Typical Of Those Of The Settlement Classes

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3). "The plaintiff can meet this requirement by showing that its injuries arise from the same events or course of conduct as do the injuries of the class, and that its claims are based on the same legal theory as those of the class." *In re Boston Scientific*, 604 F. Supp. 2d at 282 (citing *In re Credit Suisse-AOL*, 253 F.R.D. at 23). "Typical" does not mean "identical." *See Swack*, 230 F.R.D. at 260 ("As with the commonality requirement, the typicality requirement does not mandate that the claims of the class representative be identical to those of the absent class members"). Instead, typicality is primarily a "question of whether the putative class representative can fairly and adequately pursue the interests of the absent class members without being sidetracked by her own particular concerns." *Id.* at 264.  In that regard, "[t]he requirements of typicality and adequacy tend to merge." *In re Credit Suisse-AOL*, 253 F.R.D. at 22; *see also Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169, 178 (D. Mass. 2012) ("Typicality is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.") (internal quotations omitted).

Here, the claims and injuries of Plaintiffs are typical of the Settlement Classes because they all arise from the same alleged course of conduct by Defendants. With respect to the Section 10(b) claims asserted on behalf of the Individual Defendant Settlement Class, Plaintiffs allege that they, like the rest of the Individual Defendant Settlement Class, paid artificially-inflated prices for GTAT Common Stock, Senior Notes, and Call Options (or deflated prices in the case of GTAT Put Options) during the Class Period as a result of Defendants' materially misleading public statements in violation of the federal securities laws. Also, with respect to the Section 11 claims asserted on behalf of both Settlement Classes, the claims of Plaintiffs and absent Settlement Class Members are based on the same alleged misleading misrepresentations and omissions incorporated into the Registration Statement and in the other Offering materials. Thus, the claims of both Plaintiffs and absent Settlement Class Members are based on the same legal theories and would be proven by the same evidence. Thus, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.    Plaintiffs Will Fairly And Adequately Protect The Interests Of The Settlement Classes

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the Rule 23(a)(4) adequacy prerequisite, "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *In re Boston Scientific*, 604 F. Supp. 2d at 282 (internal citation omitted).

Here, there is no antagonism or conflict of interest between Plaintiffs and the proposed Settlement Classes. Plaintiffs and the other members of the Settlement Classes share the common objective of maximizing their recovery from the respective Settling Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the

common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Plaintiffs have further demonstrated their adequacy by vigorously pursuing the claims in this Action. Therefore, Rule 23(a)(4) is satisfied. Additionally, Lead Counsel has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. Further, Lead Counsel has and will continue to fairly and adequately represent the interests of the Settlement Class. Accordingly, Lead Counsel should also be appointed as class counsel for the Settlement Class under Rule 23(g).

**B.     The Settlement Classes Satisfy The Requirements Of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.     Common Legal And Factual Questions Predominate**

As the Supreme Court has noted, predominance is a test "readily met" in cases alleging violations of the securities laws. *Amchem*, 521 U.S. at 625; *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 123 (S.D.N.Y. 1997) (in case involving Section 11 claims, common questions of law and fact "overwhelmingly predominate").

Here, the same alleged course of conduct by the Settling Defendants forms the basis of all Settlement Class Members' claims against these Defendants. There are numerous common issues relating to Defendants' liability (including whether the statements of the Settling Defendants were materially false and misleading, whether the Individual Defendants acted with scienter, and damages), which predominate over any individualized issues. The predominance requirement of Rule 23(b)(3) is therefore satisfied.

### 2.      A Class Action Is Superior To Other Methods Of Adjudication

This consolidated class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the claims of the large number of investors in GTAT Securities. *See* Fed. R. Civ. P. 23(b)(3). Indeed, courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersed nature of shareholder classes, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigations. *See, e.g.*, *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (securities fraud cases are "particularly well-suited for class treatment"); *In re Evergreen*, 275 F.R.D. at 393 ("other judges of this Court have stressed that class actions are particularly appropriate for securities litigation because it may be the only practicable means of enforcing investor's rights.") (citations omitted); *John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*, No. 01-10729, 2004 WL 438790, at *2 (D. Mass. Mar. 9, 2004) ("There is little question that suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that Rule 23 of the Federal Rules of Civil Procedure has been liberally construed to effectuate that end.") (internal quotations omitted).

Considering these factors, a class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of investors in GTAT Securities. Indeed, courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersed nature of shareholder classes, the inefficiency of multiple lawsuits, and the size of individual recoveries in comparison to the costs of litigations. *See, e.g.*, *Marsh & McLennan*, 2009 WL 5178546, at *12 (the "class action is uniquely suited to resolving securities claims").

Here, the high cost of individualized litigation makes it likely that many Settlement Class Members would be unable to obtain relief without class certification. Moreover, any potential difficulties of managing the class action in further litigation and at trial need not be considered here because the settling parties seek to certify the Settlement Classes solely for the purposes of settlement. In sum, the requirements of Rule 23(b)(3) are satisfied.

## V.   NOTICE TO THE SETTLEMENT CLASSES SHOULD BE APPROVED

As outlined in the proposed Preliminary Approval Order, Lead Counsel will notify Settlement Class Members of the proposed Settlements by causing the Notice and Claim Form to be mailed to all Settlement Class Members who can be identified with reasonable effort. The Notice will advise Settlement Class Members of (i) the pendency of the Action and certification of the Settlement Classes; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Settlement Classes and objecting to the Settlements, the proposed Plan of Allocation, and/or the motion for attorneys' fees and reimbursement of Litigation Expenses. The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published once in the national edition of *The Wall Street Journal* and to be transmitted once over the *PR Newswire*. Lead Counsel will also cause a copy of the Notice and Claim form to be available on the settlement website established by the Claims Administrator.

The form and manner of providing notice to the Settlement Classes satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7). The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114; *see also Duhaime v. John Hancock Mut. Life Ins. Co.*, No. 96-10706,

1997 WL 888989, at *5 (D. Mass. June 13, 1997) (Notice and Summary Notice "constitutes due, adequate, and sufficient notice to all persons entitled to be provided with notice"); *In re Chipcom Corp. Sec. Litig.*, No. 95-11114, 1996 WL 1057531, at *1 (D. Mass. Apr. 29, 1996) (holding that Notice and Summary Notice provided "due and adequate notice . . . to all Persons entitled to notice" and "further satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirement of due process"). Accordingly, Lead Plaintiff respectfully submits that the proposed notice and related procedures are appropriate and should be approved.

## VI.     PROPOSED SCHEDULE

Lead Plaintiff respectfully proposes the schedule set forth below for Settlement-related events.  The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, Lead Plaintiff requests that Court schedule the Settlement Hearing for a date no earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

If the Court grants preliminary approval as requested, the only date the Court need schedule is the date for the final Settlement Hearing. The remaining dates set forth below will be based thereon, as set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
| --- | --- |
| Deadline for mailing the Notice and Claim Form to the Settlement Classes ("Notice Date"). | 20 business days after entry of the Preliminary Approval Order. |
| Deadline for publishing Summary Notice. | 10 business days after the Notice Date. |
| Filing of papers in support of final approval of the Settlements, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses. | 35 calendar days before the Settlement Hearing. |

| Receipt deadline for objections and requests for exclusion from the Settlement Classes. | 21 calendar days before the Settlement Hearing. |
| Filing of reply papers. | 7 calendar days before the Settlement Hearing. |
| Settlement Fairness Hearing. | A date no earlier than 120 days after entry of the Preliminary Approval Order. |

## VII.   CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, attached as Exhibit 3 to the Motion, which will (i) preliminarily approve the proposed Settlements; (ii) certify the Settlement Classes, certify Plaintiffs as class representatives, and appoint Lead Counsel as class counsel, for purposes of the Settlements; (iii) approve the proposed form and manner of providing notice of the Settlements to the Settlement Classes; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlements and related matters.

Dated:  January 26, 2018

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ John C. Browne*
John C. Browne (Admitted *Pro Hac Vice*)
Lauren Ormsbee (Admitted *Pro Hac Vice*)
Ross Shikowitz (Admitted *Pro Hac Vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 554-1400
Facsimile:  (212) 554-1444

*Lead Counsel for Plaintiffs*

**ORR & RENO, P.A.**

*/s/ Jennifer A. Eber*
Jennifer A. Eber N.H. Bar No. 8775
Jeffrey C. Spear N.H. Bar No. 14938
45 S. Main Street, PO Box 3550
Concord, NH 03302-3550
Tel: (603) 224-2381
Fax: (603) 224-2318
jeber@orr-reno.com
jspear@orr-reno.com

*Liaison Counsel for Plaintiffs*

#1152587

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of January, 2018, the above Memorandum of Law in Support of Lead Plaintiff's Motion for (I) Preliminary Approval of Individual Defendant and Underwriter Defendant Settlements, (II) Certification of Individual Defendant and Underwriter Defendant Settlement Classes, and (III) Approval of Notice to the Settlement Classes was electronically served through ECF on all registered attorneys in the case under Civil Action No. 14-cv-00443-JL.

*/s/ Jennifer A. Eber*
Jennifer A. Eber N.H. Bar No. 8775
45 S. Main Street, PO Box 3550
Concord, NH 03302-3550
Tel: (603) 224-2381
Fax: (603) 224-2318
jeber@orr-reno.com
jspear@orr-reno.com

#1152587