UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Adam S. Levy, et al.

     v.                             Civil No. 14-cv-443-JL
                                        Opinion No. 2019 DNH 059

Thomas Gutierrez, et al.

## MEMORANDUM ORDER

In this putative securities law class action, defendant Apple, Inc. has moved to compel GT Advanced Technologies, Inc. ("GTAT"), a non-party, to produce certain documents regarding GTAT's sapphire production capacities, as well as a privilege log.[1] In the underlying complaint, class plaintiffs allege GTAT, its former directors, and Apple materially misled GTAT's investors about GTAT's ability to produce sapphire materials for Apple. Apple seeks the requested sapphire production data from GTAT to rebut plaintiffs' claim.

GTAT opposes Apple's request, arguing that Apple's requested searches are disproportionate to the needs of this case and unduly burdensome. GTAT filed for Chapter 11 bankruptcy three days before class plaintiffs began filing complaints and was released thereafter of all liability arising from this action. In addition, GTAT has produced over 250,000

---

[1] Def.'s Mot. to Compel (doc. no. 212).

documents to the parties, already has incurred more than $64,000 in costs responding to Apple's subpoena, and estimates that it will incur about $200,000 more in costs if ordered to comply with Apple's requested keyword and custodian searches.

After considering Apple and GTAT's arguments and the evidence submitted in support thereof, the court grants Apple's motion to compel and orders GTAT to produce documents responsive to Apple's outstanding document requests with a privilege log within 21 days of this Order. In addition, the court grants GTAT's request that Apple cover part of GTAT's future expenses for reviewing and producing these documents, including the creation of a privilege log, as required by Fed. R. Civ. P. 45(d)(2)(B)(ii)'s mandatory cost-shifting provision.

Accordingly, Apple and GTAT shall meet and confer no later than **Tuesday, April 2, 2019** to negotiate the further keyword and custodian searches to be performed, as well as how to fairly apportion costs. The cost-shifting negotiations should take into consideration GTAT's central role in the underlying facts of this case, but also GTAT's post-bankruptcy resources. Apple shall not be responsible for any costs incurred by GTAT in opposing Apple's motion to compel or from further negotiations relating to its compliance with Apple's subpoena. If Apple and GTAT cannot reach an agreement, they may schedule a telephone conference with the court to receive further guidance.

## I. **Background**

The court draws the following background from Apple and GTAT's briefing for the present motion:

In this putative class action, plaintiffs allege that GTAT, GTAT's former directors, and Apple made materially false and misleading statements in connection with the offer and sale of securities issued in 2013 and 2014 by New Hampshire-based GTAT. The putative class consists of individual and institutional entities who acquired GTAT securities between November 5, 2013 — the day after GTAT executives announced a purportedly lucrative agreement with Apple — and October 6, 2014, when GTAT filed for Chapter 11 bankruptcy. Broadly speaking, plaintiffs assert that GTAT executives knew from the start that the agreement was doomed to fail and that those executives reaped substantial profits while investors lost millions of dollars.

In March 2016, GTAT emerged from bankruptcy as a restructured entity. As part of GTAT's bankruptcy plan, the bankruptcy court deemed all claims against GTAT prior to March 2016, including claims arising in this action, to be satisfied, discharged, and released in full. Since then, GTAT has become a privately-owned company with a workforce downsized from approximately 1,000 employees pre-bankruptcy to about 100 current employees. GTAT maintains that its resources are

limited, and that the proper management of such resources are critical for the company to succeed post-bankruptcy.

In September 2018, Apple served GTAT with a subpoena to produce additional documents. The subpoena included proposed search terms for each document request. Thereafter, Apple and GTAT met and conferred on multiple occasions to narrow Apple's requests but were unable to reach an agreement for several requests, including Request 13. Instead, GTAT proposed a limited production using a narrower set of search terms, from which Apple could review the resulting production before determining whether additional searches were necessary. GTAT did not serve formal objections until November 2018.[2] At the end of December 2018, GTAT produced approximately 8,000 documents, incurring approximately $23,700 in contract attorney fees and $41,000 fees from Akin Gump in December.[3]

Apple subsequently notified GTAT that it believed GTAT's production was deficient and requested that GTAT complete additional keyword searches for documents responsive to Request 13 for the period leading up to the Apple-GTAT agreement across

---

[2] During their negotiations, Apple and GTAT agreed to extend GTAT's response deadline to November 2018. They now dispute to what extent they agreed to extend GTAT's deadline for objecting to Apple's requests. See Def.'s Mot. to Compel Mem. (doc. no. 212-1) at 11-12; GTAT's Opp. Mem. (doc. no. 225-1) at 10.

[3] Diaz Decl. (doc. no. 225-2) ¶¶ 12-14.

at least 23 custodians.  GTAT estimates that compliance with
Apple's requests will require it to review more than 100,000
documents, incurring more than $148,000 in additional contract
attorney fees and over $50,000 in additional fees to Akin Gump.[4]
Apple maintains that it should not pay any portion of GTAT's
review or production costs.

## II.  <u>Applicable legal standard</u>

Under Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's
> claim or defense and proportional to the needs of the
> case considering the importance of the issues at stake
> in the action, the amount in controversy, the parties'
> relative access to relevant information, the parties'
> resources, the importance of the discovery in
> resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely
> benefit. Information within this scope of discovery
> need not be admissible in evidence to be discoverable.

Apple, as "[t]he party seeking information in discovery over an
adversary's objection[,] has the burden of showing its
relevance." Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134,
136 (D.N.H. 2005) (DiClerico, J.).

"Although discovery is by definition invasive, parties to a
law suit must accept its travails as a natural concomitant of
modern civil litigation." Cusumano v. Microsoft Corp., 162 F.3d

---

[4] Diaz Decl. (doc. no. 225-2) ¶ 21.

708, 717 (1st Cir. 1998). Non-parties have a different set of expectations. See id. Where, as is the case here, a party seeks discovery from a non-party, the party seeking discovery "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Furthermore, when discovery is ordered against a non-party, the court must take steps to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Id. 45(d)(2)(B)(ii). This may include ordering the party seeking discovery to share at least enough of the cost of compliance to render the remainder "non-significant." See Linder v. Calero-Portocarrero, 251 F.3d 178, 182 (D.C. Cir. 2001).

## III. **Analysis**

Apple maintains that a core aspect of plaintiffs' claims is that GTAT (and its executives) knew from the moment Apple and GTAT signed their agreement that GTAT was unable to perform as required, but fraudulently concealed this fact from investors.[5] Accordingly, Apple believes information about what GTAT (and its employees) knew when GTAT made statements to investors is vital to Apple's defense.[6] Apple asserts that GTAT did not share such

---

[5] See Def.'s Mot. to Compel Mem. (doc. no. 212-1) at 5.

[6] See id.

information during the two companies' business relationship and
did not produce such information in its prior productions to the
parties.[7]  This information includes documents from before
October 31, 2013 — the date GTAT signed its agreements with
Apple, as well as documents from key GTAT personnel previously
not included as custodians in GTAT's document productions.

   GTAT opposes Apple's requested searches, characterizing
them as disproportionate to the needs of the case and unduly
burdensome.[8]  GTAT estimates that Apple's requested searches,
which employ terms common to GTAT's business including "kg" and
"boule", will require GTAT to review more than 100,000 documents
in addition to the 20,000 documents GTAT has already reviewed
for Apple.[9]  GTAT estimates that this further review will cost
GTAT approximately $200,000, in addition to approximately
$64,000 GTAT spent responding to Apple's other subpoena requests
and costs GTAT incurred producing 250,000 documents in response
to plaintiffs' March 2018 subpoena.[10]  GTAT also briefly
questions the relevance of discovery created before October 31,

---

[7] See id. at 5-8.

[8] See GTAT's Opp. Mem. (doc. no. 225-1) at 7-10.

[9] See id. at 8.

[10] See Diaz Decl. (doc. no. 225-2) ¶¶ 12-15, 20-21.  Most of this
production included documents previously produced to the
Securities and Exchange Commission.  See GTAT's Opp. Mem. (doc.
no. 225-1) at 3.

2013 — the date of the Apple-GTAT agreement – as the statements at issue in this case occurred after the agreement was finalized.[11]

Because parties only are entitled to discovery that is relevant and proportional, the court first examines the scope of Apple's requested searches before addressing what costs Apple should bear for GTAT's subpoena compliance.

### A.   Relevance and proportionality of Apple's requests

Apple's requests largely seek relevant information and do not impose disproportionate burdens on GTAT, despite GTAT's posture as a non-party in this litigation.  Apple seeks data regarding GTAT's sapphire operations to rebut plaintiffs' contention that GTAT and the defendants fraudulently concealed GTAT's inability to perform from the moment the Apple-GTAT agreement was signed.  The court agrees that information about what GTAT knew and believed before GTAT began making statements about the agreement to the SEC and investors is relevant to Apple's defenses.  Although GTAT raises some well-taken concerns about whether Apple's requests sweepingly pursue material through generic search terms and a time period beginning well before the first allegedly misleading statement, see Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996)

---

[11] See GTAT's Opp. Mem. (doc. no. 225-1) at 8, 9 n.7,

("To the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable."), the court believes that shifting the costs of production sufficiently ameliorate these burden concerns.

**B.    GTAT's cost-shifting request**

GTAT requests that, if this court compels GTAT to comply with Apple's subpoena requests, it also orders Apple to pay GTAT's significant discovery expenses resulting from compliance. Apple opposes this request, arguing that GTAT waived its right to seek cost-shifting because GTAT did not timely object within fourteen days of service of Apple's subpoena.  In addition, Apple argues that GTAT has not met its burden for seeking cost-shifting — which Apple maintains is an exception, not the rule, for discovery issued to a non-party.  The court finds that GTAT may seek cost-shifting from Apple and grants that request, as explained below.

**1.    GTAT may seek cost-shifting from Apple, despite GTAT's delay in objecting**

Federal Rule of Civil Procedure 45(d)(2)(B) provides that an "objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Failure to serve timely objections may waive the right to object.  See Berndt v. Snyder, No. 13-CV-368, 2014 WL

6977848, at *5 (D.N.H. Dec. 9, 2014) (Johnstone, Mag. J.).  But "the failure to act timely will not bar consideration of objections in unusual circumstances and for good cause shown." Concord Boat, 169 F.R.D. at 48; Krewson v. City of Quincy, 120 F.R.D. 6, 7 (D. Mass. 1988) (Collings, Mag. J.) (refusing to compel compliance even though no timely objection made where request far exceeded bounds of fair discovery).  District courts from other circuits have found such circumstances where: (1) "the subpoena is overbroad on its face and exceeds the bounds of fair discovery," (2) "the subpoenaed witness is a non-party acting in good faith," and where (3) "counsel for the nonparty and for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena."  See, e.g., Concord Boat, 169 F.R.D. at 48 (collecting cases).  Further, "when an act may or must be done within a specified time, the court may, for good cause, extend the time . . . after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).

Apple served its subpoena on GTAT on September 17, 2018, with a compliance date of October 8, 2018.  Counsel for GTAT waited until October 5, 2018 — four days after Rule 45's 14-day window, but three days before the subpoena's compliance date — to contact opposing counsel.  As part of that conversation,

Apple and GTAT agreed to "adjourn GTAT's time to respond" to the subpoena.[12]  Thereafter, Apple and GTAT tried to negotiate GTAT's response to Apple's subpoena during at least four telephone conferences.  GTAT finally served formal objections and responses to Apple on November 15, 2018 — the agreed upon extension date.  That same day, GTAT began a rolling production.

This record does not justify a strict application of Rule 45(d)(2)(B)'s timing requirements given the good faith efforts by GTAT's counsel to meet, confer, and negotiate a discovery agreement within the subpoena's compliance period.  See, e.g., R.B. v. Hollibaugh, No. 16-CV-01075, 2017 WL 1196507, at *2 (M.D. Pa. Mar. 31, 2017) (finding no waiver where the non-party's counsel frequently corresponded with the seeking party's counsel regarding scope and compliance); Concord Boat, 169 F.R.D. at 52 (finding a non-party had not waived its right to request cost-shifting where the subpoena was overbroad on its face, the subpoena requested voluminous documents from a non-party, and the non-party's counsel was in frequent contact with the request party's counsel regarding compliance).  Accordingly, the court considers GTAT's request for cost-shifting.

_____

[12] Def.'s Mot. to Compel (doc. no. 212-9) at 1-2.  Counsel for Apple followed up one week later, memorializing a subsequent agreement to "extend the compliance date" from October 9 to November 15, 2018.  Id. (emphasis added).

### 2.  Avoiding significant expense as to GTAT

Federal Rule of Civil Procedure 45(d)(2)(B)(ii) provides that an order compelling a non-party to produce documents "must protect" a non-party "from significant expense resulting from compliance."  In its motion, Apple, relying on Dahl v. Bain Capital Partners, LLC, 655 F. Supp. 2d 146, 148 (D. Mass. 2009) (Harrington, J.), and Fed. R. Civ. P. 26's 2015 advisory committee notes, argues that cost-shifting is the exception, not the rule, and thus is inappropriate here.  Apple's cited authority is inapposite to the present case.  In Dahl, the court focused on whether cost-shifting was appropriate between litigating parties, not between a party and non-party as is the case here.  Likewise, the advisory committee's note regarding cost-shifting again speaks to cost-shifting norms among parties.

The First Circuit Court of Appeals has not yet opined on whether Rule 45's fee-shifting provision is mandatory.  The four federal appellate courts that have opined on the question, however, all agree that Rule 45 mandates cost-shifting where a non-party's compliance with a court order would result in significant expense.  See In re Modern Plastics Corp., 890 F.3d 244, 253 n.6 (6th Cir. 2018) (Looking to equitable factors as part of a discretionally consideration of shifting costs "would be inconsistent with the language of the current rule."); Legal Voice v. Stormans Inc., 738 F.3d 1178, 1184 (9th Cir. 2013)

("[W]hen discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party."); Linder, 251 F.3d at 182 (quoting 1991 amendment advisory committee note) ("[T]he 1991 changes were intended 'to enlarge the protections afforded persons who are required to assist the court.'"); see also R.J. Reynolds Tobacco v. Phillip Morris, Inc., 29 Fed. Appx. 880, 882 (3d Cir. 2002). Moreover, the vast majority of district courts that have considered the impact of Rule 45's 1991 amendments agree with the D.C., Sixth, and Ninth Circuit Courts of Appeals that cost-shifting is mandatory when a non-party is ordered to comply with a discovery request and will incur significant costs. See, e.g., Valcor Eng'g Corp. v. Parker Hannifin Corp., No. 816CV00909JVSKESX, 2018 WL 3956732, at *2 (C.D. Cal. July 12, 2018); In re Aggrenox Antitrust Litig., No. 3:14-MD-02516, 2017 WL 4679228, at *1 (D. Conn. Oct. 18, 2017).

Given this overwhelming authority holding that cost-shifting is mandatory, Rule 45 requires the court to consider only whether Apple's subpoena imposes significant expense on GTAT and if so, to order Apple to bear some part of GTAT's compliance costs to make such costs "non-significant." See Linder, 251 F.3d at 182. And in light of Rule 45's silence, the

court is afforded broad discretion to determine what constitutes a "significant" expense, which is a case specific inquiry.

In conducting this analysis, many district courts, including those in the First Circuit, continue to look to three equitable factors considered before the 1991 amendment. See High Rock Westminster St., LLC v. Bank of Am., N.A., No. CV 13-500S, 2014 WL 12782611, at *1 (D.R.I. June 17, 2014) (Almond, Mag. J.); Behrend v. Comcast Corp., 248 F.R.D. 84, 87 (D. Mass. 2008) (Alexander, J.); see also In Re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C. 1992) (stating that "there is no indication that [the drafters of new Rule 45] also intended to overrule prior Rule 45 case law, under which a non-party can be required to bear some or all of its expenses where the equities of a particular case demand it."). These factors are whether the (1) "nonparty has an interest in the outcome of the case;" (2) "nonparty can more readily bear its costs than the requesting party;" and (3) "litigation is of public importance." E.g., Behrend, 248 F.R.D. at 86.

GTAT seeks cost-shifting for approximately $200,000 in estimated compliance costs. Taking the financial representations in GTAT's briefing on their face, this amount is significant. But this does not mean that Apple must bear the entire cost of compliance. See Linder, 251 F.3d at 182. With respect to the first equitable factor, there is no denying that

GTAT's conduct is at the core of plaintiffs' class allegations. See Behrend, 248 F.R.D. at 87 (D. Mass. 2008); Tutor-Saliba Corp. v. United States, 32 Fed. Cl. 609, 610 n.5 (1995) (noting that nonparty "was substantially involved in the underlying transaction and could have anticipated that the contract . . . might . . . reasonably spawn some litigation, and discovery of [non-party]"). The allegedly misleading statements identified in plaintiffs' consolidated class complaint were made in GTAT's SEC regulatory filings and GTAT's public statements to investors. GTAT's argument that it has no interest in this case's outcome because of its post-bankruptcy posture and change in corporate leadership ignores the facts that (i) the products and technologies at issue in this case remain important to GTAT today, and (ii) GTAT may face business consequences in present and future endeavors should a jury find that the company recently engaged in fraudulent or dishonest acts.

The second equitable factor — GTAT's ability to bear costs, in contrast, weighs in GTAT's favor, given GTAT's recent bankruptcy and limited financial resources. The court, however, does not read this factor as requiring Apple to pay a higher share because of its financial success, as suggested by GTAT.[13]

---

[13] See GTAT's Opp. Mem. (doc. no. 225-1) at 14 (citing no legal support).

Finally, the third factor — public importance — is not applicable to the present inquiry.

After considering these factors, the court grants GTAT's request for cost-shifting and orders Apple and GTAT to meet and confer by **Tuesday, April 2, 2019**, to negotiate further keyword and custodian searches to be performed, as well as how to fairly apportion costs.  These negotiations should take into consideration the court's equitable analysis above, but should not consider any costs incurred by GTAT for its prior productions or in opposing Apple's motion to compel.  If Apple and GTAT cannot reach an agreement, they may schedule a telephone conference with the court for further guidance.

## IV. <u>Conclusion</u>

For the reasons discussed above, the court GRANTS Apple's motion to compel[14] and GTAT's request for cost-shifting.[15]  Though the parameters suggested in Apple's Appendix B[16] appear reasonable to the court, Apple and GTAT may negotiate further or other keyword and custodian searches in light of this order. Apple and GTAT shall meet and confer no later than **Tuesday, April 2, 2019**, to negotiate further searches, as well as how to

---

[14] Def.'s Mot. to Compel (doc. no. 212).

[15] GTAT's Opp. Mem. (doc. no. 225-1) at 10-15.

[16] Def.'s Mot. to Compel, App. B (doc. no. 212-3).

fairly apportion costs.  If Apple and GTAT cannot reach an
agreement, they may schedule a telephone conference with the
court for further guidance.

    **SO ORDERED.**

                                    _____
                                    Joseph N. Laplante
                                    United States District Judge

Dated:  March 28, 2019

cc:  All counsel of record